## A98A1133. HAMILTON v. THE STATE.
(504 SE2d 236)

ELDRIDGE, Judge.

On July 16, 1997, at approximately 3:35 p.m., defendant Linda Hamilton was stopped on Turner Hill Road in DeKalb County for driving 62 mph in a 45 mph speed zone. The weather was cloudy, the road was dry, and traffic was light. The DeKalb County Solicitor-General filed an accusation in DeKalb County State Court charging Hamilton with two counts of speeding. Hamilton pled not guilty and demanded a jury trial.

On January 15, 1998, Hamilton appeared for trial without counsel and represented herself. She apparently declined to have the proceedings taken down by the court reporter. Accordingly, there is no transcript of what the trial court said in advising Hamilton regarding her decision to act pro se or the risks of proceeding without the

benefit of a trial transcript. However, Hamilton signed a waiver of counsel form,[1] and the trial court issued an order in which she concluded that Hamilton had validly waived her right to counsel.[2]

It is undisputed that, at trial, Hamilton testified in her own defense and was cross-examined by the State. The jury subsequently convicted Hamilton of both counts of speeding.[3]

The record contains a transcript of the sentencing phase,[4] during which the trial court made numerous questionable statements regarding Hamilton's unwillingness to admit to the act for which she was convicted and the trial court's belief that Hamilton had lied during her testimony as to prior speeding, a belief that was based upon inferences made from outside the record. According to the trial court, the State asked Hamilton during cross-examination whether she had "ever" driven over the speed limit, an improper question which injected Hamilton's character into evidence. Hamilton testified that she never sped, then clarified her answer, saying that she sped only when necessary as a matter of safety, as when trying to pass a truck. The State presented no evidence that Hamilton had ever sped previously. It is undisputed that Hamilton had never been charged with speeding prior to this incident. Thus, any inference to the contrary

---

[1] The waiver form stated as follows: "I have been advised of the nature of the charges against me, the maximum and minimum punishment provided by law and my right to be represented by a private attorney[.] I understand that I am not eligible for the assistance of the public defender and I have decided to represent myself at trial. . . . I have been advised by the court of the dangers of proceeding to trial without the assistance of counsel. I understand that a lawyer might be able to discover and raise defenses to the charge(s) against me, discover weaknesses in the State's case, and/or offer advice that might otherwise benefit me during my trial. I understand that I have the right to remain silent at trial and I am not required to testify or offer any other evidence at trial. I understand that I will be bound by the rules of trial procedure during my trial even though I have not been trained as a lawyer." Under Hamilton's signature at the bottom of the page, someone wrote "Age 38 . . . Post-college education." However, such proposed waiver does not set forth that the defendant understood the possible defenses to the charges, circumstances in mitigation, that the State cannot place the defendant's character in evidence, a detailed description of trial procedure, and the statement of any plea offers and the consequences to constitute a *knowing relinquishment of the right of counsel* in addition to knowing that there is a right of counsel. See *Rutledge v. State*, 224 Ga. App. 666, 669 (3) (482 SE2d 403) (1997); see also *Cook v. State*, 227 Ga. App. 674 (490 SE2d 181) (1997).

[2] The trial court's order stated that "I have satisfied myself that [Hamilton] has decided to forego the assistance of counsel and represent himself [sic] and that this decision is free, voluntary, and intelligent. Moreover, it has been made with an understanding of the consequences of representing one's self."

[3] Hamilton was charged with and convicted on two separate counts: driving 62 mph in a 45 mph speed zone and driving at a speed in excess of the posted 45 mph speed limit. Hamilton's convictions were merged for sentencing purposes. See OCGA § 16-1-7; see also *Padgett v. State*, 205 Ga. App. 576, 578 (423 SE2d 411) (1992).

[4] This Court specially notes that transcripts of the sentencing phase and hearing on the motion for reconsideration were produced on appeal only after Hamilton filed a writ of mandamus to compel the trial court to produce such transcripts for inclusion in the record on appeal. See *Hamilton v. Majette*, No. CA 98-4809-1 (DeKalb Super. Ct. filed April 22, 1998).

was made from outside the record.

Even so, during sentencing, the trial court stated that "it is incredible for anyone to get up on the stand and say that you have never sped." The trial court then sentenced Hamilton to serve two days in jail *because the court believed that Hamilton lied during her testimony* as to prior speeding.[5] The trial court also sentenced Hamilton to 12 months on probation, a $1,000 fine plus court costs, and 80 hours of community service. Hamilton persuaded the trial court to allow her to present herself for the jail sentence on the following Tuesday, January 20, 1998.[6]

On January 20, 1998, Hamilton appeared with counsel before the trial court. Counsel made an oral motion to the court to reconsider the jail sentence. According to the transcript of the hearing, the trial court repeatedly reiterated that Hamilton was sentenced to jail because she lied to the jury as to prior speeding. After the trial court denied the motion, counsel requested that the court set an appeal bond. Although Hamilton owned a home, was employed, had family in the area, and stood convicted of a misdemeanor, the trial court set a bond of $10,000. This appeal follows. *Held*:

1. (a) In her first enumeration of error, Hamilton claims ineffective assistance of counsel, based upon numerous substantial errors she committed during her pro se defense. However, "[w]hen a criminal defendant elects to represent [herself], . . . [she] will not thereafter be heard to assert a claim of ineffective assistance of counsel with respect to any stage of the proceedings wherein [she] was counsel." (Citation and punctuation omitted.) *Williams v. State*, 192 Ga. App. 317, 319 (3) (384 SE2d 877) (1989).

(b) Even so, in pursuing her ineffectiveness claim, Hamilton also raises the legitimate issue of whether or not she knowingly and intelligently waived her right to counsel. Because this Court finds that the record does not show that Hamilton had sufficient information upon which to effect a valid waiver, notwithstanding the trial court's conclusory order, we reverse.

"When an accused is placed on trial for any offense, whether felony or misdemeanor, for which [she] faces imprisonment, the consti-

---

[5] We note, however, that the trial court's statements during sentencing indicate that Hamilton's sentence possibly was influenced also by Hamilton's demand for a jury trial. The trial court admonished Hamilton that "[c]ollectively literally thousands of dollars have been spent, in attorney time, police officer time, in the Court's time, delaying other matters that had . . . been previously scheduled, so that you could have your day in court, that there is a cost to all of that. You understand what I'm saying?" The trial court also lamented the cost of a jury trial during the hearing on Hamilton's motion for reconsideration.

[6] Immediately following the trial, the trial court, on its own motion, ordered the evidence produced at trial to be sealed. Such evidence was unsealed on March 6, 1998, for transmission to this Court, following a motion by Hamilton.

tutional guarantee of right to counsel attaches. As with all constitutional rights, the accused may forfeit this right by a knowing and intelligent waiver. Waiver of counsel requires more than a showing of a knowledge of right to counsel; there must also be *evidence of relinquishment*" of this right. (Citations and punctuation omitted; emphasis supplied.) *Rutledge v. State*, 224 Ga. App. 666, 669 (3) (482 SE2d 403) (1997). See also *Johnson v. Zerbst*, 304 U. S. 458 (58 SC 1019, 82 LE 1461) (1938); *Taylor v. Ricketts*, 239 Ga. 501 (238 SE2d 52) (1977); *Keith v. State*, 218 Ga. App. 729 (1) (463 SE2d 51) (1995); *Kirkland v. State*, 202 Ga. App. 356, 357-358 (1) (414 SE2d 502) (1991). In other words, the record should establish that the defendant "knows what [she] is doing" in choosing self-representation and that her choice is made "with eyes open." (Citations and punctuation omitted.) *Clarke v. Zant*, 247 Ga. 194, 195 (275 SE2d 49) (1981).

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused — whose life or liberty is at stake — is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." (Citations and punctuation omitted.) *McCook v. State*, 178 Ga. App. 276 (342 SE2d 757) (1986). See also *Johnson v. Zerbst*, supra at 465; *Clarke v. Zant*, supra at 196. "In order to establish a valid waiver, a trial judge must investigate *as long and as thoroughly as the circumstances of the case before him demand*. To be valid[,] such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and *all other facts essential to a broad understanding of the matter*. When determining whether there has been an informed and intelligent waiver of such a right, *each case must be determined upon its own peculiar facts and circumstance[s]*. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." (Citations and punctuation omitted; emphasis supplied.) *Rutledge v. State*, supra at 669-670 (3). See also *Clarke v. Zant*, supra at 196; *King v. State*, 231 Ga. App. 775 (501 SE2d 19) (1998); *Keith v. State*, supra; *Kirkland v. State*, supra at 357-358 (1); *Harris v. State*, 196 Ga. App. 796 (1) (397 SE2d 68) (1990). In so noting, we recognize that there is "no magic language that must be used by a trial judge in determining that a defendant has made a valid waiver of his right to counsel." *Reviere v. State*, 231 Ga. App. 329, 330 (498 SE2d 332) (1998); see also *King v. State*, supra at 776.

On appeal, the appellant generally carries the burden to show

error affirmatively by the record. *Keith v. State*, supra at 729 (1), citing *Hudson v. State*, 197 Ga. App. 428, 429 (2) (398 SE2d 779) (1990). However, when a defendant challenges an alleged waiver on appeal, it is the State's burden to prove that the defendant received sufficient information and guidance from the trial court upon which to knowingly and intelligently relinquish this right. *Wilson v. State*, 230 Ga. App. 74 (495 SE2d 330) (1997); *Keith v. State*, supra at 730; *Kirkland v. State*, supra at 357. This evidence must overcome the presumption against waiver. See *Cook v. State*, 227 Ga. App. 674, 676 (490 SE2d 181) (1997); *Keith v. State*, supra at 730.

(c) Looking at the totality of facts and circumstances in this case, the only evidence in the record which supports a finding that Hamilton validly waived her right to counsel was a waiver form signed by Hamilton. However, there was a cursory order by the trial court and a more explicit order denying Hamilton's motion for reconsideration dated January 21, 1998, which simply reiterated the same conclusions of the trial court without stating the facts upon which the court relied regarding Hamilton's alleged waiver.[7] In the January 21 order, the trial court noted that it instructed Hamilton in accordance with *Cook v. State*, supra, and concluded that Hamilton understood "the consequences of self[-]representation." The order also stated that Hamilton was advised of the "benefits of an official transcript."

In *Cook v. State*, supra at 675, the record included a transcript which showed, *in detail*, the court's warnings to the defendant which reflected that the defendant had been informed about the risks of proceeding pro se at trial. Numerous other cases have found that the case records sufficiently supported the State's assertion that the defendant knowingly waived the right to counsel. For example, in *Rutledge v. State*, supra, this Court found that the trial transcript "clearly" indicated that the defendant knowingly and voluntarily waived his right to counsel. However, the *Rutledge* Court also found that, even if the trial court erred in allowing the defendant to proceed pro se, such error was harmless, since court-appointed counsel provided assistance regarding procedural matters during trial, so that *the defendant did not stand trial " 'alone with no assistance or protec-*

---

[7] This Court recognizes that, during the sentencing hearing and the hearing on the motion to reconsider, the trial court stated that it previously had given Hamilton instructions regarding the State's burden of proof and the defendant's right not to testify. However, the trial court also expressly noted that Hamilton clearly did not "understand the gravity of what you have done" in choosing to testify on her own behalf. This is particularly true when the trial court makes inferences from such testimony that are not supported by the record in aggravation for sentencing purposes. Since the trial court went to considerable trouble in preparing a lengthy written order setting forth her conclusions of law, then, had such order contained a recitation of facts upon which such conclusions were based, i.e., what the verbatim warnings were and what defendant's response had been, the evidentiary basis would have existed.

*tion of his rights.'* " (Emphasis supplied.) Id. at 670. See also *Clarke v. Zant,* supra at 197; *Wakily v. State,* 225 Ga. App. 56 (483 SE2d 313) (1997); *Staples v. State,* 209 Ga. App. 802, 804 (434 SE2d 757) (1993); *Williams v. State,* supra at 318-319 (2). Also, the *Rutledge* Court found that the State's evidence against the defendant was strong, the defendant was given "considerable" latitude during cross-examination, and the "defendant was well prepared to defend himself and did so in a credible fashion. [Therefore, this Court concluded] that it is unlikely that defendant's convictions were attributable to his decision to represent himself." (Citations and punctuation omitted.) Id. at 671. See also *King v. State,* supra at 776; *Reviere v. State,* supra at 330; *McCook v. State,* supra at 277-278.

In this case, there is no transcript of the trial court's instructions to Hamilton regarding her right to counsel and the significant potential consequences of proceeding pro se. Indeed, this case provides many examples of such consequences, some of which are tied directly to Hamilton's ill-informed decision to waive recording of the proceedings.[8] For example, there is no indication in the record that Hamilton was apprised of the *real possibility* of a jail sentence, even though she never before had been charged with speeding and no other aggravating circumstances were present; it is unlikely that one would anticipate a jail sentence following a conviction based on a first offense for speeding 17 miles over the speed limit, even though such sentence is statutorily authorized. Additional considerations of which Hamilton should have been advised were the inherent difficulties on appeal in challenging her conviction and sentence, due to the failure to have the proceedings taken down; the opportunity to strike a former prosecutor from the jury or to assert an objection to the trial court's alleged failure to strike for cause; the opportunity to object to questioning and the importance of preserving an objection for consideration on appeal;[9] the risk that a fundamental misunderstanding of the State's burden of proof might influence one to waive other constitutional rights by testifying in one's own behalf; or that the State could not inject her character into evidence unless she did it first.[10] Under

---

[8] We note, without deciding, that advising the defendant about the "benefits" of transcription is insufficient to support an informed waiver of such right unless the defendant is also advised about the risks of the failure to transcribe, particularly the difficulties in challenging a conviction or sentence on appeal.

[9] Specifically, the prosecution violated the prohibition of OCGA § 24-9-20 (b) by inquiring on cross-examination into prior similar criminal conduct, i.e., speeding. If Hamilton answered yes, then she admitted to such conduct without a pretrial hearing pursuant to *Williams v. State,* 261 Ga. 640 (409 SE2d 649) (1991); if she answered no, as she did, then the prosecutor raised the issue of her credibility, i.e., as shown by the influence on the trial judge.

[10] Hamilton asserted during the sentencing hearing that she had talked to the jurors following the trial and that they "thought I had a good case *but not enough evidence to sup-*

the circumstances *in this case,* information regarding these issues was necessary for Hamilton to fully appreciate the risks of self-representation and to make a truly informed decision about whether to waive her right to counsel, as well as to fulfill the trial court's protective duty to pro se defendants once the decision has been made to proceed without counsel. The waiver form failed to advise her of such matters. A proper waiver form should contain the warnings verbally given by the court instead of the conclusions.

Instead, in proving Hamilton's alleged waiver on appeal, the State relies on a waiver form signed by Hamilton, the trial court's conclusory findings that Hamilton knowingly waived her rights, and the trial court's subsequent assertions that Hamilton was duly informed of her rights. However, accepting the trial court's assertion that it undertook to so inform Hamilton, it was incumbent upon the trial court to provide either a record with sufficient particularity regarding the information given or to set forth the findings of fact upon which the conclusions of law were based, so as to allow for subsequent appellate review. Although we reiterate that no "magic words" regarding specific risks or benefits are necessary to prove a waiver, the totality of the evidence in the record must show that the trial court provided sufficient information, assistance, and support to allow the defendant to make a truly informed decision to knowingly relinquish counsel under the individual circumstances of the case. Under the facts and circumstances of *this* case, it is clear that this did not occur with sufficiency for the defendant to knowingly relinquish the right to counsel.

Accordingly, we find that the State's evidence in this case was insufficient to meet its burden of proving a valid waiver and that the trial court erred in finding that Hamilton knowingly and voluntarily waived her constitutional right to counsel.

(d) Further, the record clearly shows that Hamilton was, indeed, standing "alone with no assistance or protection of [her] rights." See *Rutledge v. State,* supra at 670, and cases cited in Division 1 (c), supra. In fact, Hamilton's mistakes during trial *directly resulted* in the trial court's branding her as a liar and imposing a jail sentence that was harsh under the circumstances, although statutorily authorized. We therefore conclude that Hamilton's alleged waiver of counsel very likely contributed to her subsequent conviction and resultant sentence. Accordingly, such harmful error requires reversal. We remand this case to the trial court for a new trial and a proper advising of the defendant of her rights.

---

*port my stand,"* i.e., that she was not speeding. (Emphasis supplied.) This statement clearly indicates that Hamilton believed that she had the burden to disprove the State's case.

2. For purposes of this appeal, Hamilton's remaining enumerations are moot. Further, they are unlikely to recur upon retrial and, therefore, will not be addressed.

*Judgment reversed and remanded. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JULY 1, 1998 —
RECONSIDERATION DENIED JULY 16, 1998 — 

*Ronald B. Arenson*, for appellant.
*Ralph T. Bowden, Jr., Solicitor, Raymond J. Burby IV, W. Cliff Howard, Assistant Solicitors*, for appellee.