A10A0424. RANA v. THE STATE.
(697 SE2d 867)

BARNES, Presiding Judge.

A jury found Kamlesh Rana guilty of criminal attempt to commit murder and criminal solicitation to commit murder. The trial court merged the solicitation count into the attempt conviction and sentenced Rana to five years in prison, followed by five years on probation. Rana appeals, challenging the sufficiency of the evidence, the admission of certain testimony, the trial court's jury instructions, and his sentence. For the reasons that follow, we affirm.

1. In reviewing Rana's challenge to the sufficiency of the evidence, we construe the evidence favorably to the jury's verdict,

---

and Rana no longer enjoys a presumption of innocence. *Hughes v. State*, 290 Ga. App. 475 (659 SE2d 844) (2008). We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the jury was authorized to find Rana guilty beyond a reasonable doubt. Id.

So viewed, the evidence shows that in April 2007, Detective Michael Lee of the Kingsland Police Department received a tip from a confidential informant that Rana wanted to hire a hit man to kill his uncle. Lee involved the Georgia Bureau of Investigation ("GBI") in the investigation. During a meeting that included the confidential informant, Lee, and a GBI agent, the informant received a telephone call from Rana. Lee took the telephone from the informant and, posing as a hit man, told Rana that he could "tak[e] care of the problem that [Rana] had with the uncle." Rana indicated that Lee "need[ed] to hurry" because his uncle was going to the Jacksonville airport for a flight to London. When Lee replied that he wanted money first, Rana stated: "No, just hurry, just hurry; don't worry about the money . . . just get him, get him; he's heading to the airport."

Lee told Rana that he had "people" going to the airport to take care of the problem and that they needed to meet for a down payment. Rana instructed Lee to meet him at his house. Under audio and video surveillance of the GBI, Lee and the confidential informant went to the residence to meet with Rana. During the meeting, Rana stated that he wanted his uncle shot. When Lee asked whether he was "sure," Rana replied "yeah." The confidential informant called a GBI agent who was posing as a hit man in Florida, and Rana gave Lee a handwritten check for $5,000. A few minutes later, the confidential informant spoke with the "hit man," who "advised that the murder had been completed." Rana then gave Lee a $2,000 check.

The jury found Rana guilty of criminal attempt to commit murder and criminal solicitation to commit murder. The evidence supports these verdicts. Criminal attempt results "when, with intent to commit a specific crime, [a person] performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. A person commits criminal solicitation "when, with intent that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes, or otherwise attempts to cause the other person to engage in such conduct." OCGA § 16-4-7 (a). Given the evidence presented, including that Rana asked Lee to have his uncle killed, described the uncle's location, and made two payments totaling $7,000, the jury was authorized to find Rana guilty of criminal attempt to commit murder and criminal solicitation of murder. See *O'Kelly v. State*, 196 Ga. App. 860, 862 (3) (397

SE2d 197) (1990); *Howell v. State*, 157 Ga. App. 451, 455-457 (4) (278 SE2d 43) (1981).

Trying to combat these findings, Rana argues that, as a matter of law, the defenses of impossibility and entrapment barred his convictions. With respect to impossibility, Rana claims that by the time he met with Lee outside his home, his uncle was already through security at the Jacksonville airport, rendering a murder at that point impossible. He further argues that because the bank account on which the checks were written contained no funds, he ultimately could not pay for a hit.

The defense of impossibility, however, is limited. Pursuant to OCGA § 16-4-4,

> [i]t is no defense to a charge of criminal attempt that the crime the accused is charged with attempting was, under the attendant circumstances, factually or legally impossible of commission if such crime could have been committed had the attendant circumstances been as the accused believed them to be.

The evidence shows that when Rana met with Lee, the uncle was in a secure portion of the Jacksonville airport. Nothing indicates, however, that Rana knew his uncle was out of a hit man's reach. On the contrary, Rana urged Lee to "get" his uncle, and when Rana thought that Lee's associates had the uncle cornered at the airport, he told Lee to have him killed.

Although the uncle's actual location may have precluded a hit, the evidence shows that Rana believed the hit was possible. Similarly, even if Rana's bank account was empty, the "hit man" accepted a check for his work, and Rana offered no evidence that he believed his financial situation would derail the hit. Given these circumstances, impossibility was not a defense. See *Gordon v. State*, 252 Ga. App. 133, 134 (1) (555 SE2d 793) (2001); compare *Guzman v. State*, 206 Ga. App. 170, 172 (2) (424 SE2d 849) (1992) (impossibility defense raised where defendant could not have completed drug purchase because she had no money) (physical precedent only).

Rana's entrapment argument also lacks merit. The defense of entrapment has three distinct elements: "(1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime." *Rapier v. State*, 245 Ga. App. 211, 212 (1) (535 SE2d 860) (2000). According to Rana, authorities took advantage of him and induced him to solicit the murder while he was "in an extremely drunken state." But nothing in the surveillance video demonstrates

that, as a matter of law, Lee or the confidential informant took advantage of Rana or induced him to engage in criminal activity. And although Rana testified that he had been drinking heavily and did not remember the day in question, jurors were authorized to disbelieve this testimony, particularly given their observations of Rana on the video.

Despite Rana's claims to the contrary, the evidence did not demand a finding of entrapment. The jury, which was fully instructed on the issue, was entitled to weigh the evidence and find that Rana was not induced by authorities to hire a hit man. Accordingly, the evidence was sufficient to support his convictions. See *Rapier*, supra.

2. Rana also claims that the trial court erred in refusing to give his requested jury instruction on impossibility. As discussed above, however, the facts failed to raise an impossibility defense. Rana did not testify that he thought the hit was impossible when he met with Lee. In fact, he claimed to remember nothing from that day. The trial court, therefore, was not required to charge the jury on impossibility. See *Priester v. State*, 249 Ga. App. 594, 596 (1) (a) (549 SE2d 429) (2001) (trial court properly refused to give jury charge that was not supported by the evidence).

3. Rana contends that the trial court erred in admitting hearsay statements from the confidential informant, who did not testify at trial. Asserting that the evidence violated his constitutional right to confront witnesses, Rana claims that essentially all of the testimony involving the confidential informant was inadmissible. Rana, however, did not object to much of the testimony at issue. Absent an objection, his hearsay and confrontation clause arguments are waived. See *Alford v. State*, 293 Ga. App. 512, 515 (3) (667 SE2d 680) (2008); *Hughes*, supra, 290 Ga. App. at 478 (2).

Within the transcript pages cited by Rana, defense counsel raised three hearsay objections. Counsel first objected to Lee's testimony that during his initial meeting with the confidential informant, the informant received a telephone call. The prosecution clarified that Lee would not be asked about the informant's conversation, and the trial court overruled the objection. The fact that the informant received a telephone call fell within Lee's personal knowledge and was neither hearsay nor objectionable on confrontation clause grounds. See OCGA § 24-3-1 (defining hearsay); *Thomas v. State*, 284 Ga. 540, 542 (2) (668 SE2d 711) (2008) (under certain circumstances, confrontation clause bars admission of testimonial *statements* by witness who does not appear at trial). The trial court sustained defense counsel's next hearsay objection. And the last objection involved Lee's testimony regarding the logistics of the undercover operation, which again did not reference any statements

by the informant. Rana has not shown error in the admission of this testimony.

4. Finally, Rana argues that the trial court improperly increased his punishment because he elected to have a jury trial, rather than accept the State's pre-trial plea offer. He claims that following trial, a sentencing court is bound by the last offer made by the State during plea negotiations. In his view, any sentence that exceeds the terms of a pre-trial plea offer violates due process by "enhanc[ing] punishment for exercising the protected Right of Trial by Jury."

We have consistently rejected this type of constitutional attack on the plea bargain process. As noted in *Allen v. State*, 193 Ga. App. 670, 672 (388 SE2d 889) (1989):

> The Supreme Court of the United States has not held that the Federal Constitution forbids the imposition of a less lenient sentence when a criminal defendant rejects a plea bargain and insists upon his right to trial. A criminal defendant should not be allowed to reject a sentence concession that is offered in return for a guilty plea and then bind the State to that rejected original lenient sentence even though he is later convicted after a trial. To hold otherwise would allow a criminal defendant to go to trial and seek an acquittal knowing that, even if unsuccessful, he would receive a sentence which is no less lenient than that he was originally offered.

See also *Moore v. State*, 283 Ga. App. 533, 537-538 (2) (642 SE2d 163) (2007); *Price v. State*, 281 Ga. App. 844, 845-846 (2) (637 SE2d 468) (2006); *Benjamin v. State*, 269 Ga. App. 232, 233 (2) (603 SE2d 733) (2004).

On appeal, Rana argues that recent United States Supreme Court authority has "signaled the constitutional [death] knell against imposing a harsher sentence because a defendant exercises [his] constitutionally protected right to trial by jury rather than pleading guilty." The cases cited by Rana, however, do not, in any way, declare the plea bargain process unconstitutional or limit a defendant's ultimate sentence to that offered by the State in pre-trial negotiations. See *United States v. Booker*, 543 U. S. 220 (125 SC 738, 160 LE2d 621) (2005) (addressing procedure for enhanced sentencing under the United States Sentencing Guidelines); *Blakely v. Washington*, 542 U. S. 296 (124 SC 2531, 159 LE2d 403) (2004) (addressing procedure for enhanced sentencing under Washington sentencing guidelines). Accordingly, this claim of error presents no basis for reversal.

*Judgment affirmed. Bernes, J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED JULY 1, 2010 — ▮▮▮▮▮▮▮▮▮▮

*McNeill Stokes*, for appellant.
*Stephen D. Kelley, District Attorney, Rocky L. Bridges, Assistant District Attorney*, for appellee.