### A11A0935. MARTIN-ARGAW v. THE STATE.
(716 SE2d 737)

DILLARD, Judge.

Following trial, a jury convicted Tamerat Martin-Argaw on four counts of aggravated assault, one count of possession of a firearm during the commission of a felony, one count of burglary, and one count of aggravated stalking. Martin-Argaw appeals his convictions and the denial of his motion for new trial, arguing that fatal variances between the indictment and the evidence introduced at trial with regard to three of the aggravated-assault counts rendered that evidence insufficient to support his conviction on those counts, and further arguing that the trial court erred in admitting similar-transaction evidence of his subsequent plot to murder two of the aggravated-assault victims. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the evidence shows that Martin-Argaw and his wife married in 1998, but in 2003, their relationship began to deteriorate due to Martin-Argaw allegedly engaging in an extra-marital affair. Indeed, when confronted with this allegation, Martin-Argaw became so violent toward his wife that she called the police to intervene on several occasions. And over the next few years, Martin-Argaw and his wife's relationship continued to spiral downward. In May 2006, Martin-Argaw's wife obtained a temporary protective order, which prohibited him from having any direct contact with her. One month later, following a hearing, the trial court issued a six-month protective order, which prohibited Martin-Argaw from having any direct contact with his wife and further ordered that he stay away from the marital home.

On the evening of July 12, 2006, Martin-Argaw's wife invited her friends Peter Vanderpool and Delores Elder to her home for dinner to celebrate her and Vanderpool's recent birthdays. But not long after the three friends sat down to eat on the back deck of the house, Martin-Argaw approached the home, rushed up the stairs leading to the back deck, pulled out a pistol, and fired it at his wife and her

---

[1] *See, e.g., Goolsby v. State,* 299 Ga. App. 330, 330-31 (682 SE2d 671) (2009); *see also Jackson v. Virginia,* 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

dinner companions. As the shot was fired, Elder bravely jumped in front of Martin-Argaw's wife, and the bullet grazed her head. Vanderpool and Martin-Argaw's wife then quickly scrambled inside, but Martin-Argaw followed closely behind, chasing his wife as she ran toward the kitchen.

Not wanting to be shot in the back, Martin-Argaw's wife stopped in the kitchen area near the living room, turned, and courageously faced her husband. Martin-Argaw then pulled the trigger of his gun, but, fortunately, the pistol jammed. At that same moment, Vanderpool—who had run into the living room—yelled at Martin-Argaw in an attempt to distract him, at which point Martin-Argaw grabbed a samurai sword from the mantel above the living room's fireplace and chased Vanderpool outside. But when he was unable to catch Vanderpool, Martin-Argaw discarded the sword in some nearby bushes and fled the scene. In the meantime, Martin-Argaw's wife and the wounded Elder managed to call the police, and, within minutes, several officers arrived.

Martin-Argaw was ultimately arrested in Kentucky by FBI agents and was brought back to Georgia. Thereafter, he was indicted on five counts of aggravated assault,[2] with Counts 1, 4, and 5 alleging that he fired a gun at his estranged wife, Vanderpool, and Elder, as they sat on the back deck of his wife's home; Count 2 alleging that he fired a gun at his wife in an area between the kitchen and the family room inside the home; and Count 3 alleging that he pointed the gun at his wife and pulled the trigger while she was in the kitchen area of the home. In addition, Martin-Argaw was indicted on one count of possession of a firearm during the commission of a felony[3] (Count 6), one count of violating the Georgia Firearms and Weapons Act[4] (Count 7), one count of burglary[5] (Count 8), and one count of aggravated stalking[6] (Count 9).

Prior to trial, the State filed a notice of its intent to introduce similar-transaction evidence that after his arrest, Martin-Argaw asked his cellmate to assist him in finding someone he could pay to murder his wife, his wife's son from a previous marriage, and Vanderpool. However, unbeknownst to Martin-Argaw, his cellmate informed police about the plot. Consequently, an undercover police officer, posing as a hitman, met with Martin-Argaw and confirmed that he was seeking to pay someone to murder his wife, her son, and

---

[2] See OCGA § 16-5-21 (a) (2).
[3] See OCGA § 16-11-106 (b) (1).
[4] See OCGA § 16-11-122.
[5] See OCGA § 16-7-1 (a).
[6] See OCGA § 16-5-91 (a).

Vanderpool before trial. And after holding a hearing[7] on the State's motion, the trial court ruled that Martin-Argaw's murder-for-hire plot was admissible as similar-transaction evidence.

During Martin-Argaw's trial, his estranged wife and her two friends testified as to the details of the July 12, 2006 incident, and several police officers testified regarding their subsequent investigation. Additionally, Martin-Argaw's former cellmate and the undercover officer, who posed as a hitman, testified regarding Martin-Argaw's intention to hire someone to murder his wife, her son, and Vanderpool. Finally, Martin-Argaw testified in his own defense and claimed that his wife and her friends had fabricated their accounts of the incident. Nevertheless, at the conclusion of the trial, the jury found Martin-Argaw guilty on all counts of the indictment except for Counts 2 and 7.[8] Thereafter, he filed a motion for new trial, which the trial court denied after conducting a hearing on the matter. This appeal follows.

1. Martin-Argaw contends that there was a fatal variance between the allegations in Counts 1 and 4 of the indictment and the evidence introduced at trial with regard to those respective aggravated-assault counts, and, therefore, that the evidence was insufficient to support his conviction on those counts. We disagree.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[9] We do not weigh the evidence or determine witness credibility "but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[10] Accordingly, the jury's verdict will be upheld "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case[.]"[11]

In the case sub judice, Count 1 of the indictment alleged that Martin-Argaw committed an aggravated assault upon his estranged wife "with a handgun, a deadly weapon, by firing his gun at [his wife], outside of the residence . . . ." Similarly, Count 4 of the indictment alleged that Martin-Argaw committed an aggravated

---

[7] No transcript of this hearing was included in the record.

[8] The jury found Martin-Argaw not guilty of the aggravated assault alleged in Count 2, and the State moved for an entry of nolle prosequi on the violation of the Georgia Firearms and Weapons Act alleged in Count 7.

[9] *See, e.g., English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[10] *Lott v. State*, 303 Ga. App. 775, 775 (1) (694 SE2d 698) (2010) (citation omitted).

[11] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citation and punctuation omitted).

assault upon Vanderpool "with a handgun, a deadly weapon, by firing the handgun at [Vanderpool], outside of the residence . . . ." And Count 5 of the indictment alleged that he committed an aggravated assault upon Elder "with a handgun, a deadly weapon, by firing the handgun and striking her in the head outside of the residence . . . ."

Martin-Argaw argues that although there was evidence he "fired" his handgun at Elder, contrary to the allegations in Counts 1 and 4 of the indictment, there was no evidence that he "fired" his handgun at his estranged wife or at Vanderpool, and, therefore, his convictions on those two counts should be reversed. This argument is wholly without merit.

It is well settled that "the act of firing a weapon into a group [makes] each individual in the group a separate victim and [justifies] a separate count of aggravated assault for each victim."[12] And here, the evidence showed that Martin-Argaw's wife, Vanderpool, and Elder were all sitting together eating when Martin-Argaw rushed up onto the back deck of his wife's house and fired his gun toward them. Thus, there was no fatal variance between the allegations in Counts 1 and 4 of the indictment and the evidence at trial, and that evidence was clearly sufficient to support Martin-Argaw's convictions on the charges of aggravated assault alleged in those counts.

2. Martin-Argaw similarly contends that there was a fatal variance between the allegation in Count 3 of the indictment and the evidence introduced at trial with regard to that aggravated-assault count, and, therefore, that the evidence was insufficient to support his conviction on that count. Again, we disagree.

Count 3 of the indictment alleged that Martin-Argaw committed an aggravated assault upon his estranged wife "with a handgun, a deadly weapon, by pointing the handgun and pulling the trigger at [his wife] in the kitchen area of the residence . . . ." Martin-Argaw argues that, contrary to the allegations in Count 3, the evidence showed that his wife was in the living room of her home, rather than in the kitchen area, when he pointed his pistol and attempted to shoot her; and, based on this alleged fatal variance, he concludes that his conviction on Count 3 should be reversed. We are unpersuaded.

Here, Martin-Argaw's wife initially testified that the aggravated assault alleged in Count 3 occurred "between my family room headed back toward my kitchen . . . ." Shortly thereafter, she testified that she was "between [the] kitchen and dining room area"

---

[12] *Scott v. State*, 302 Ga. App. 111, 114 (2) (690 SE2d 242) (2010) (citation and punctuation omitted); *see also Robertson v. State*, 245 Ga. App. 649, 650 (1) (538 SE2d 755) (2000); *Pace v. State*, 239 Ga. App. 506, 509 (6) (521 SE2d 444) (1999).

when Martin-Argaw tried to shoot her but, fortunately, failed to do so because his pistol jammed. Accordingly, there was some evidence that the aggravated assault alleged in Count 3 occurred in the kitchen area. Moreover, "[a]ny alleged inconsistencies in the evidence and issues of [his wife's] credibility were for the jury, not this Court, to resolve";[13] and the jury obviously resolved those issues against Martin-Argaw.[14]

Furthermore, assuming arguendo that there was a variance between the allegation in Count 3 and the evidence at trial, that variance was not fatal. It is certainly true that "[a]verments in an indictment as to the specific manner in which a crime was committed are not mere surplusage and must be proved as laid, or the failure to prove the same will amount to a fatal variance and a violation of the defendant's right to due process of law."[15] Our Supreme Court has long held, however, that

> [t]he general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.[16]

In this case, the part of the indictment that Martin-Argaw argues was unsupported by the evidence—i.e., the exact room of the house where this specific aggravated assault occurred—was "an unnecessary specification of a legally unnecessary fact."[17] Indeed, when we ignore this portion of the indictment as mere surplusage, the remainder of the indictment sufficiently apprised Martin-Argaw that he was being charged with the specific assault that occurred inside the house in which he pointed his handgun at his wife and pulled the trigger but the gun failed to fire. Accordingly, because Count 3 of the indictment informed Martin-Argaw of this aggravated-assault charge and differentiated it from the other charges so that he could not be prosecuted again for that offense, any alleged variance

---

[13] *Walker v. State*, 304 Ga. App. 45, 47 (695 SE2d 373) (2010) (citation and punctuation omitted); *see also Lilly v. State*, 285 Ga. App. 427, 429 (646 SE2d 512) (2007).

[14] *See Walker*, 304 Ga. App. at 47; *Bright v. State*, 301 Ga. App. 204, 205-06 (1) (687 SE2d 208) (2009).

[15] *Quiroz v. State*, 291 Ga. App. 423, 425 (1) (662 SE2d 235) (2008) (footnote and punctuation omitted).

[16] *DePalma v. State*, 225 Ga. 465, 469-70 (3) (169 SE2d 801) (1969) (citation and punctuation omitted).

[17] *Quiroz*, 291 Ga. App. at 425 (1) (footnote and punctuation omitted).

between the allegations and proof was not fatal.[18]

3. Martin-Argaw further contends that the trial court erred in admitting as a similar transaction evidence of his post-arrest plot to murder his wife, her son, and Vanderpool, arguing only generally that the prejudicial effect of that evidence outweighed its probative value. We disagree.

It is well established that "[t]he decision of a trial court to admit evidence of similar transactions will be upheld unless clearly erroneous."[19] And under *Williams v. State*,[20]

> [t]o be admissible for the purposes of establishing motive, intent, course of conduct or bent of mind, the State must show (a) sufficient evidence that the similar transaction occurred and (b) sufficient connection or similarity between the similar transaction and the crime alleged so proof of the former tends to prove the latter.[21]

Furthermore, "[w]hen considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question."[22]

Here, the trial court found that the evidence that Martin-Argaw attempted to hire someone to murder his wife, her son, and Vanderpool was admissible to show "motive, intent, identity, course of conduct, and bent of mind where the incidents involve attempts to harm or kill the same individuals." And based on our review of the record, the trial court's finding was not clearly erroneous and, thus, will not be disturbed on appeal.[23]

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

---

[18] *See id.* at 424-26 (holding that variance between indictment alleging that defendant held knife to victim's neck and proof that defendant only pointed knife at victim was not fatal to conviction for aggravated assault); *Nash v. State*, 222 Ga. App. 766, 766-67 (1) (476 SE2d 69) (1996) (holding that variance between indictment alleging that defendant threw a knife at the victim and proof that the knife fell out of the defendant's hand as he was stabbing the victim was not fatal to conviction for aggravated assault).

[19] *Payne v. State*, 285 Ga. 137, 138 (674 SE2d 298) (2009).

[20] 261 Ga. 640 (409 SE2d 649) (1991).

[21] *Payne*, 285 Ga. at 138; *see Williams*, 261 Ga. at 642 (2) (b).

[22] *Id.*

[23] *See Davis v. State*, 279 Ga. 786, 787-88 (3) (621 SE2d 446) (2005) (finding that evidence of defendant's murder of witnesses to the murder for which he was being tried was admissible to show defendant's course of conduct and bent of mind); *Rainey v. State*, 179 Ga. App. 584, 586 (4) (347 SE2d 341) (1986) (holding that evidence of assault on victim that was subsequent to the arson for which defendant was tried was admissible to show defendant's bent of mind toward violence directed at the victim); *see also McCoy v. State*, 273 Ga. 568, 571 (5) (544 SE2d 709) (2001) (holding that "evidence of a threat to a witness by the defendant is relevant as showing an attempt to prevent a witness from testifying and avoid punishment for the crime"); *Fugitt v. State*, 256 Ga. 292, 293-94 (1) (a) (348 SE2d 451) (1986) (same).

DECIDED SEPTEMBER 8, 2011.

*Clegg & Petrey, John H. Petrey*, for appellant.
*Daniel J. Porter, District Attorney, Stephen A. Fern, Assistant District Attorney*, for appellee.