**FIFTH DIVISION
MCFADDEN, P. J.,
BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 17, 2017**

# In the Court of Appeals of Georgia

A17A1107. MARTIN-ARGAW v. THE STATE.

McFADDEN, Presiding Judge.

Tamarat Martin-Argaw was accused of trying to hire a hit man to kill his then-wife, her adult son, and a family friend. After a jury trial at which he represented himself, Martin-Argaw was convicted of three counts of criminal attempt to commit murder. On appeal, he challenges the sufficiency of the evidence, arguing that there was no evidence showing that he took the required substantial step toward the commission of these crimes; we find, however, that the evidence authorized the jury's verdict. Alternatively, Martin-Argaw argues that he is entitled to a new trial because the trial court failed "to inform him of the specific dangers of proceeding without counsel." Because the record does not show that Martin-Argaw knowingly, intelligently, and voluntarily waived his right to counsel, we agree that he is entitled

to a new trial, and we therefore reverse the judgment and remand the case for proceedings not inconsistent with this opinion.

1. *Sufficiency of the evidence.*

Martin-Argaw argues that the evidence was insufficient to show that he committed the offense of criminal attempt, which a person commits "when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. This offense "consists of three elements: first, the intent to commit the crime; second, the performance of some overt act towards the commission of the crime; and third, a failure to consummate its commission." *Wittschen v. State*, 259 Ga. 448 (1) (383 SE2d 885) (1989) (citations and punctuation omitted). Accord *Brewster v. State*, 261 Ga. App. 795, 798 (1) (d) (584 SE2d 66) (2003).

The evidence authorized the jury to find Martin-Argaw guilty of criminal attempt to commit murder. That evidence, viewed in the light most favorable to the jury's verdict, see *Rana v. State*, 304 Ga. App. 750, 750-751 (1) (697 SE2d 867) (2010), showed that in 2006 Martin-Argaw was subject to a temporary restraining order that prohibited him from contact with his estranged wife. On July 12, 2006, Martin-Argaw went to his wife's house and fired a gun at her and two of her friends

2

as they were having a cookout. Martin-Argaw shot one of the friends, injuring her, then pursued the group into the house, where he fired the gun several more times. At one point he pointed the gun directly at his wife and pulled the trigger, but the gun did not fire. The other friend distracted Martin-Argaw while his wife hid, and Martin-Argaw then fled. (These facts are set forth in greater detail in *Martin-Argaw v. State*, 311 Ga. App. 609, 609-610 (716 SE2d 737) (2011).)

In connection with these actions, Martin-Argaw was arrested, jailed, and ultimately convicted of various offenses, including aggravated assault and aggravated stalking, and we affirmed his convictions in *Martin-Argaw*, supra, 311 Ga. App. 609. In 2006, while in jail, Martin-Argaw told his cellmate that he wanted three people killed and asked his cellmate if he knew "somebody who could carry out a hit." Martin-Argaw talked about the hit "repeatedly" and asked his cellmate about a hit man several times. The cellmate informed his attorney about these conversations, and the attorney relayed this information to the district attorney.

With the assistance of Martin-Argaw's cellmate, a police investigator arranged for Martin-Argaw to get in touch with an undercover officer posing as a hit man. Martin-Argaw had two conversations with the undercover officer — an initial telephone conversation and a subsequent face-to-face conversation at the jail.

3

Recordings of both conversations were played for the jury. In the telephone conversation, Martin-Argaw gave the "hit man" the names and addresses of the three people he wanted killed. In the face-to-face conversation, Martin-Argaw and the "hit man" discussed specific details of the killings, negotiated a price, and discussed logistics of payment. The "hit man" told Martin-Argaw that he would complete the hit before receiving payment but demanded that Martin-Argaw agree not to change his mind about the hit, and Martin-Argaw responded by expressly stating that he wanted the "hit man" to kill all three people.

Martin-Argaw asserts that this evidence did not show he committed the necessary substantial step toward the commission of murder-for-hire because he did not pay the hit man. We disagree.

> An act constituting a "substantial step" is one done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations amount to an attempt. It is a question of degree, and depends upon the circumstances of each case. . . . The "substantial step" requirement shifts the emphasis from what remains to be done to what the actor has already done. The fact that further steps must be taken before the crime can be completed does not preclude such a finding that the steps already undertaken are substantial.

4

*English v. State*, 301 Ga. App. 842, 843 (689 SE2d 130) (2010) (citations, punctuation, and emphasis omitted). The purpose of the "substantial step" requirement is to impose criminal liability for attempt "only in those instances in which some firmness of criminal purpose is shown" and to "remove very remote preparatory acts from the ambit of attempt liability[.]" *Howell v. State*, 157 Ga. App. 451, 456 (4) (278 SE2d 43) (1981) (citation and punctuation omitted).

The evidence in this case showed that Martin-Argaw had expressly asked the undercover officer — whom he believed to be a hit man — to kill three people; that he had given the "hit man" specific information about the three people to help him accomplish this purpose; that he had agreed to pay a negotiated price for the hit; that he had discussed the logistics of making the payment; and that he had responded affirmatively when the "hit man" made it clear that Martin-Argaw did not need to do anything else before the hit occurred. Contrary to Martin-Argaw's argument, our decision in *Howell v. State*, supra, 157 Ga. App. 451, in which the defendant made a payment to a hit man, does not stand for the proposition that such a payment is *required* for a reasonable trier of fact to find that a defendant had taken a substantial step toward committing murder. See *English*, supra, 301 Ga. App. at 844. The jury was authorized to find that the evidence showed the firmness of purpose needed to

5

satisfy the substantial step requirement. See *Rana*, supra, 304 Ga. App. at 571-572 (1).

2. *Right of self-representation.*

Martin-Argaw argues that he is entitled to a new trial because the trial court "failed to inform him of the specific dangers of proceeding without counsel." We agree. As detailed below, the record in this case does not show that the trial court made Martin-Argaw aware of the dangers of self-representation, as required for him to make a knowing, intelligent, and voluntary waiver of his right to counsel.

"Both the federal and state constitutions guarantee a criminal defendant both the right to counsel and the right to self-representation." *Wiggins v. State*, 298 Ga. 366, 368 (2) (782 SE2d 31) (2016) (citations omitted). Accord *Thomas v. State*, 331 Ga. App. 641, 657 (7) (771 SE2d 255) (2015). "[W]hile a criminal defendant has an absolute right to counsel in any prosecution which could result in imprisonment, [he] also has a fundamental right to represent himself in a state criminal trial 'when he voluntarily and intelligently elects to do so.'" *Clark v. Zant*, 247 Ga. 194, 195 (275 SE2d 49) (1981) (quoting *Faretta v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975)). In making this election, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that

6

he knows what he is doing and his choice is made with eyes open." *Clark*, supra (citations and punctuation omitted).

Accordingly, if a defendant makes a pre-trial, unequivocal assertion of the right to self-representation, his request "must be followed by a hearing to ensure that the defendant knowingly and intelligently waives the traditional benefits associated with the right to counsel and understands the disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Wiggins*, supra, 298 Ga. at 368 (2) (citations and punctuation omitted). See *Owens v. State*, 398 Ga. 813, 814 (2) (783 SE2d 611) (2016). This determination depends on the peculiar facts and circumstances of each case, *Taylor v. Ricketts*, 239 Ga. 501, 503 (238 SE2d 52) (1977), and in making this determination, "a trial judge must investigate as long and as thoroughly as the circumstances of the case before [her] demand." *Tyner v. State*, 334 Ga. App. 890, 893 (1) n. 3 (780 SE2d 494) (2015) (citation and punctuation omitted). The trial judge is not required to use any particular language in making the defendant aware of his right to counsel and the dangers of self-representation. See *Simpson v. State*, 238 Ga. App. 109, 112 (1) (517 SE2d 830) (1999); *Hamilton v. State*, 233 Ga. App. 463, 466 (1) (b) (504 SE2d 236) (1998). In fact, our Supreme Court has expressly disapproved the reading of decisions of this

7

court, such as *Raines v. State*, 242 Ga. App. 727, 729 (1) (531 SE2d 158) (2000), and *Prater v. State*, 220 Ga. App. 506, 509 (469 SE2d 780) (1996), to require a trial court to make specific inquiries of a defendant. See *Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000); *Wayne v. State*, 269 Ga. 36, 38 (2) (495 SE2d 34) (1998). The record "need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." *Wayne*, supra at 38 (2) (citations omitted). (We acknowledge the concern raised by Judge Bethel in his concurring opinion that the current state of Georgia's case law on this issue may leave trial courts without clear guidance as to how to fulfill their obligations in this regard.)

Moreover, "when a defendant challenges an alleged waiver on appeal, it is the [s]tate's burden to prove that the defendant received sufficient information and guidance from the trial court upon which to knowingly and intelligently relinquish this right. This evidence must overcome the presumption against waiver." *Hamilton*, supra at 467 (1) (b) (citations omitted). See also *McDaniel v. State*, 327 Ga. App. 673, 675-676 (1) (b) (761 SE2d 82) (2014).

The state has not met its burden in this case. The record shows that between Martin-Argaw's arrest in 2006 and his trial in 2014, three different attorneys

8

represented him. During this time Martin-Argaw repeatedly complained about his counsel and asked the trial court to appoint him new counsel. By 2011, Martin-Argaw was represented by his third attorney and the trial court denied his request to appoint yet another attorney. Later that year, the trial court agreed to allow the third attorney to withdraw and let Martin-Argaw hire a new attorney himself, but the trial court informed Martin-Argaw that she would reappoint the third attorney if he did not hire someone. However, it does not appear from the record that Martin-Argaw hired an attorney.

The trial court addressed this issue again at a May 2013 calendar call, at which Martin-Argaw, who was not a native English speaker, participated both in English and, with the help of an interpreter, in his native language of Amharic. Martin-Argaw told the trial court that he could not afford to hire his own attorney and again requested that he be appointed a new attorney. After discussing the issue of new counsel, the trial court denied Martin-Argaw's request and the following colloquy between the trial court and Martin-Argaw then occurred:

> THE COURT: . . . [Y]our choices are to stick with [appointed trial counsel], to hire your own attorney, or to represent yourself.
> THE DEFENDANT: I want to represent myself.
> THE COURT: Okay, that's fine then.

THE DEFENDANT: (Speaking in English.) Anything he's handled my case, everything transfer.

THE COURT: I didn't understand you.

[Brief interjection by prosecutor.]

THE DEFENDANT: Everything he handled haven't been solved. He didn't transfer back to the system. Nothing been solved for me, so he didn't do anything for me, that's why I'm going to represent myself.

THE COURT: Okay, well, you can certainly represent yourself, Mr. Martin-Argaw.

THE DEFENDANT: I understand. I can understand English.

THE COURT: Okay, I just want to make a couple of points clear. I want to be clear that you understand that the Court cannot act as your attorney, I can't advise you during trial, I can't explain legal points or principles to you. You will be required to understand and follow the rules of evidence and the rules of criminal procedure. Do you understand all that? Do you want [appointed counsel] to be present with you to answer questions?

THE DEFENDANT: He is over.

After then discussing with the parties some logistical issues relating to Martin-Argaw's self-representation, the trial court released Martin-Argaw's appointed trial counsel from his representation and continued the case for 30 days to allow Martin-Argaw to prepare for trial.

The trial court raised the issue of Martin-Argaw's self-representation on two other occasions before trial. When Martin-Argaw made an unintelligible request and appeared not to understand the procedure at a December 2013 calendar call, the trial court first stated, "I would like you to rethink whether you want to represent yourself

or whether you want to be represented by an attorney," and later stated, "I want to once again encourage you to take advantage of a court-appointed attorney to represent you in this matter." And at a pre-trial motion hearing, the trial court stated:

> I am concerned that you do not have the legal knowledge to present this case to the jury. We've had a quick motion this morning, and I again am concerned that you do not understand the nature of the motion. You're looking to the Court to explain it to you, and I can't do that. . . . I will ask you again, are you sure that you do not want [the third appointed attorney] to represent you?

On both occasions, Martin-Argaw reiterated his desire to represent himself at trial.

Subsequently, Martin-Argaw filed a motion to proceed pro se, in which he represented that he was "well aware of the risks and dangers of proceeding pro se" and requested that the trial court "find him, knowingly and intelligently, freely and voluntarily making the decision to represent himself and forgo legal counsel in the case." The trial court granted the motion in an order stating that she had "review[ed] the file and consider[ed] th[e] request[.]" In accordance with that order, Martin-Argaw's third appointed attorney acted as standby counsel at trial.

The trial court did not articulate on the record an express finding that Martin-Argaw knowingly and voluntarily waived his right to counsel. Such a finding, while

11

preferable, is not required "when the record as a whole demonstrates a defendant's knowing waiver." *McDaniel*, supra, 327 Ga. App. at 675 (1) (a) (citation, punctuation, and emphasis omitted). But the record in this case, as a whole, does *not* demonstrate Martin-Argaw's knowing waiver. The colloquy at the May 2013 calendar call does not show that Martin-Argaw was made aware of the dangers of representing himself; the trial court merely informed Martin-Argaw that he would be required to abide by evidentiary and procedural rules without the court's assistance. See id. at 676, 680 (1) (b) (holding that the state did not meet its burden of demonstrating on the record that defendant was aware of dangers of representing himself, even though record showed that trial court, among other things, "informed him that he would be required to abide by the procedural rules, introduce evidence according to the rules of evidence, and make his own objections"). At the December 2013 calendar call, the trial court asked Martin-Argaw to reconsider his decision but provided no additional information to him. Although the trial court expressed her concern about Martin-Argaw's legal knowledge at the motion hearing, she did not "try to make [him] aware of the dangers and disadvantages he faced proceeding pro se at trial due to his ignorance of basic criminal law concepts[.]" *Lamar v. State*, 278 Ga. 150, 152 (1) (b) (593 SE2d 488) (2004). And the trial court's order granting Martin-Argaw's motion to proceed pro

12

se "fails to provide details about the information actually provided to [him], and therefore cannot be used to satisfy the [s]tate's burden" of "demonstrating on the record that [Martin-Argaw] was made aware of the dangers of representing himself." *McDaniel*, supra, 327 Ga. App. at 680 (1) (b) (citations omitted).

Moreover, the state has not shown that it was harmless to allow Martin-Argaw to represent himself under these circumstances. See *McDaniel*, supra, 327 Ga. App. at 682 (1) (c) (state bears burden of showing that trial court's failure to fully inform defendant of dangers of proceeding pro se was harmless). "We have repeatedly found that [the trial court's failure to establish a valid waiver of counsel] was not harmless where the record showed that the defendant did not mount an able defense — even though the evidence of guilt was ample." *Middleton v. State*, 254 Ga. App. 648, 650-651 (2) (563 SE2d 543) (2002) (citations omitted). And Martin-Argaw did not mount an able defense in this case. His defense centered on challenging the credibility of the accounts given by his cellmate and the undercover officer, and challenging the authenticity of the recordings of his conversations with the undercover officer. But he asked very few questions of these witnesses on cross-examination and did not object to the admission of the recordings. He presented little if any evidence to support his defense, hampering his ability to argue that defense in closing.

13

"We therefore reverse and remand this case for a new trial. When the case returns to the trial court, [Martin-Argaw] may choose to be represented by counsel or waive his right to counsel, after being made aware of the dangers of proceeding pro se." *McDaniel*, supra, 327 Ga. App. at 682 (1) (c) (citation omitted). See *Lamar*, supra, 278 Ga. at 153 (2) (state is authorized to retry defendant where evidence was sufficient to authorize conviction but trial court erred in decision regarding defendant's self-representation).

*Judgment reversed and remanded with direction. Branch, J. concurs and Bethel, J., concurs dubitante.*

A17A1107. MARTIN-ARGAW v. THE STATE.

BETHEL, Judge, concurring dubitante.

I concur dubitante[1] in the opinion of the Presiding Judge because it is a correct application of the law as has been interpreted and articulated by this Court. Accordingly, this case will join our case law that commands our trial courts to "jump," but refuses to say "how high." My reading of our authority on the question presented leaves me with doubts that our cases clearly state the law and reservations about the lack of clarity in our prior decisions. In particular, I take issue with the vague instruction this Court has given to the bench and the bar regarding the method

---

[1] "A concurrence dubitante is a concurrence that is given doubtfully. Unlike a concurrence in the judgment only or a special concurrence without a statement of agreement with all that is said — which, according to our Rule 33 (a), renders a decision physical precedent only — a concurrence dubitante is a full concurrence, albeit one with reservations." *Benefield v. Tominich*, 308 Ga. App. 605, 611 n.28 (708 SE2d 563) (2011) (Blackwell, J., concurring dubitante).

for ascertaining whether a criminal defendant's waiver of his right to counsel was both knowing and voluntary.[2]

Our case law notes that where a defendant makes a pre-trial, unequivocal assertion of the right to self-representation, his request "*should* be followed by a hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation."[3] But we have not explicitly stated that such a hearing *must* be held. Presumably, this is because the "determination depends on the peculiar facts and circumstances of each case," as the Presiding Judge notes. And in this case, Martin-Argaw represented to the trial court in his motion that he was "well aware of the risks and dangers of proceeding pro se" and requested that the trial court "find him, knowingly and intelligently, freely and voluntarily making the decision to represent himself and forgo legal counsel in this case." The trial court did so, but we now hold this was error because the trial judge did not do enough to investigate whether Martin-Argaw's representation was accurate. This begs the question of what, then, the trial court should have done to

---

[2] *See also Manning v. State*, 260 Ga. App. 171, 173 (581 SE2d 290) (2003) (Ruffin, P.J., and Barnes, J., concurring specially).

[3] *Owens v. State*, 298 Ga. 813, 814 (2) (783 SE2d 611) (2016) (emphasis supplied).

2

avoid erroneously concluding that Martin-Argaw's waiver of his right to counsel was both knowing and voluntary.

The Presiding Judge correctly notes that a "trial judge is not required to use any particular language in making the defendant aware of his right to counsel and the dangers of self-representation."[4] And the Supreme Court has noted that while "it would be helpful, it is not incumbent upon a trial court to ask each of the questions set forth in *Prater*.[5] Rather, the "record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." *Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000) (citation and punctuation omitted).

---

[4] *See Simpson v. State*, 238 Ga. App. 109, 112 (1) (517 SE2d 830) (1999); *Hamilton*, 233 Ga. App. 463, 466 (1) (b) (504 SE2d 236) (1998).

[5] To establish that a waiver of the right to counsel was "knowing and intelligent," it would be helpful for the trial court to ensure that the defendant had been told "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter." *Prater v. State*, 220 Ga. App. 506, 509 (469 SE2d 780) (1996).

3

It is not sufficient for the trial court to merely apprise a defendant that representing himself is generally a bad idea.[6] Rather, the trial court should have asked Martin-Agraw about the "dangers of self-representation" he claimed to know and understand. And evidently something short of a hearing where the trial court asks each of the *Prater* questions, but gives more than a general warning, could work. *See, e.g.*, *Jones*, 272 Ga. at 886 (2) (defendant knowingly and intelligently waived right to counsel where public defender testified that she informed defendant of the charge, possible sentences, and dangers of self-representation); *Simpson*, 238 Ga. App. at 112 (1) (waiver permitted where trial court informed defendant that representing himself was "extraordinarily unwise" and where defendant had an "ongoing dialogue with his appointed counsel about the dangers of representing himself").

It is in this gray area that our case law loses clarity, and that the trial court risks reversal due to our lack of guidance as to what "dangers" it must be sure a defendant understands. And it is here that I cannot help but think that we should either defer to

---

[6] *See Manning*, 260 Ga. App. at 172 (waiver not knowing and voluntary where defendant was aware he was facing considerable prison time but trial court simply warned him that he lacked sufficient legal knowledge and that representing himself was an "unwise decision" and "extremely ill-advised").

4

the trial court's finding that a defendant has knowingly and voluntarily waived his or her right to counsel as a matter of fact unless it is clearly erroneous, or establish a clear requirement for a hearing on the record that includes an inquiry as to all the points listed in *Prater*. Otherwise, we seem to be telling our trial courts to just "keep jumping" when this circumstance comes before you.