**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 5, 2023**

# In the Court of Appeals of Georgia

A23A0990. MARTIN-ARGAW v. THE STATE.

WATKINS, Judge.

On retrial,[1] a jury found Tamarat Martin-Argaw guilty of three counts of criminal attempt to commit murder[2] after he tried to hire a hit man to kill his then-wife, her adult son, and a family friend. On appeal, Martin-Argaw argues that the trial court committed reversible error in excluding evidence pertaining to a pending indictment against one of the State's witnesses. For the reasons set forth below, we

---

[1] See *Martin-Argaw v. State*, 343 Ga. App. 864 (806 SE2d 247) (2017) (reversing Martin-Argaw's 2016 convictions and remanding for a new trial because the record did not show that he knowingly, intelligently, and voluntarily waived his right to counsel).

[2] See OCGA §§ 16-4-1; 16-5-1 (a).

conclude that the State has established beyond a reasonable doubt that the limitation on the right of confrontation was harmless. We therefore affirm.

Viewed in the light most favorable to the verdict,[3] the evidence shows that in December 2006, Martin-Argaw was in custody in Gwinnett County following his arrest for aggravated assault and related charges. We stated the facts regarding those underlying charges in his 2011 appeal:[4]

> Martin-Argaw and [Frances Martin] married in 1998, but in 2003, their relationship began to deteriorate due to Martin-Argaw allegedly engaging in an extra-marital affair. Indeed, when confronted with this allegation, Martin-Argaw became so violent toward [Martin] that she called the police to intervene on several occasions. And over the next few years, Martin-Argaw and [Martin's] relationship continued to spiral downward. In May 2006, [Martin] obtained a temporary protective order, which prohibited him from having any direct contact with her. One month later, following a hearing, the trial court issued a six-month protective order, which prohibited Martin-Argaw from having any direct contact with [Martin] and further ordered that he stay away from the marital home.
>
> On the evening of July 12, 2006, [Martin] invited her friends Peter Vanderpool and Delores Elder to her home for dinner to celebrate her and Vanderpool's recent birthdays. But not long after the three friends

---

[3] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

[4] *Martin-Argaw v. State*, 311 Ga. App. 609 (716 SE2d 737) (2011).

sat down to eat on the back deck of the house, Martin-Argaw approached the home, rushed up the stairs leading to the back deck, pulled out a pistol, and fired it at [Martin] and her dinner companions. As the shot was fired, Elder bravely jumped in front of Martin-Argaw's wife, and the bullet grazed her head. Vanderpool and [Martin] then quickly scrambled inside, but Martin-Argaw followed closely behind, chasing [Martin] as she ran toward the kitchen.

Not wanting to be shot in the back, [Martin] stopped in the kitchen area near the living room, turned, and courageously faced her husband. Martin-Argaw then pulled the trigger of his gun, but, fortunately, the pistol jammed. At that same moment, Vanderpool—who had run into the living room—yelled at Martin-Argaw in an attempt to distract him, at which point Martin-Argaw grabbed a samurai sword from the mantel above the living room's fireplace and chased Vanderpool outside. But when he was unable to catch Vanderpool, Martin-Argaw discarded the sword in some nearby bushes and fled the scene. In the meantime, [Martin] and the wounded Elder managed to call the police, and, within minutes, several officers arrived.

Martin-Argaw was ultimately arrested in Kentucky by FBI agents and was brought back to Georgia. Thereafter, he was indicted on five counts of aggravated assault, [weapons charges], burglary, and . . . aggravated stalking.[5]

While in jail, Martin-Argaw approached his cellmate, Henry Engram, wanting help finding someone to kill Martin. Engram, who was concerned that Martin-Argaw

---

[5] Id. at 609-610.

was trying to set him up, reached out to his attorney, Greg McKeithen, who took the information to the district attorney's office. The case was ultimately assigned to Detective Christopher Smith with the Gwinnett County police department. Smith enlisted the assistance of an undercover investigator to pose as a hit man.

Detective Smith gave instructions and a phone number to Engram. Martin-Argaw, with the assistance of Engram, called the number from the jail on December 8, 2006, and spoke with the "hit man." The call was recorded on the jail's telephone recording system. During the call, Martin-Argaw discussed hiring the "hit man" for a murder, and they scheduled an in-person meeting.

The "hit man," wearing a recording device, met with Martin-Argaw at the Gwinnett County jail on December 11, 2006. Martin-Argaw stated that he wanted the "hit man" to kill Martin, her adult son, and Vanderpool. Martin-Argaw instructed the "hit man" to shoot Martin with a .380 pistol and afterwards to place the gun on her "breast." Martin-Argaw discussed paying the "hit man" somewhere between $40,000 and $45,000 to commit the murders.

Detective Smith obtained a search warrant to search Martin-Argaw's cell. Smith located notes in Martin-Argaw's handwriting with the names and additional identifying information for the proposed murder-for-hire victims. Following the

4

search, Smith arrested Martin-Argaw, *Mirandized*[6] him, and conducted a custodial interview.

The interview was video recorded and played for the jury. During the interview, Martin-Argaw admitted to meeting with the "hit man" and discussing the deaths of the three victims. Martin-Argaw expressed his anger at all three victims.

Following the jury verdict, the trial court denied Martin-Argaw's amended motion for new trial. This appeal followed.

On appeal, Martin-Argaw argues that the trial court abused its discretion in cutting off all inquiry on cross-examination into the then-pending criminal indictment of McKeithen, Engram's attorney. Martin-Argaw contends that the constitutional error was not harmless because McKeithen was a key witness and the evidence may have influenced the jury's verdict. The State concedes error but argues that McKeithen was a minor witness and that the evidence against Martin-Argaw was overwhelming.

In 2019, McKeithen was indicted on multiple counts of computer invasion of privacy, and a single count each of violation of oath by a public officer and theft by taking. Martin-Argaw moved in limine that he be allowed to impeach McKeithen

---

[6] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

regarding the then-pending indictment on the ground that it was relevant to show bias. The court excluded the evidence from coming in.

We agree with the parties that this ruling violated Martin-Argaw's Sixth Amendment right of confrontation.[7] Although the error was one of constitutional magnitude, "it can be harmless error if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming."[8] "The fact that there was other sufficient evidence to convict does not make the error harmless; rather, the test is whether the evidence may have influenced the jury's verdict."[9]

> [F]actors include [(1)] the importance of the witness' testimony in the prosecution's case, [(2)] whether the testimony was cumulative, [(3)] the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, [(4)] the extent of

---

[7] See *Davis v. Alaska*, 415 U. S. 308, 315-316, 318 (94 SCt 1105, 39 LE2d 347) (1974); *Hines v. State*, 249 Ga. 257, 259 (2) (290 SE2d 911) (1982).

[8] (Citation and punctuation omitted.) *Davidson v. State*, 304 Ga. 460, 470 (4) (819 SE2d 452) (2018) (reviewing error in admitting statement made by the defendant after he invoked his right to remain silent).

[9] (Citation and punctuation omitted.) *Mangum v. State*, 274 Ga. 573, 577 (2) (555 SE2d 451) (2001).

6

cross-examination otherwise permitted, and, of course, [(5)] the overall strength of the prosecution's case.[10]

First, McKeithen's testimony was not of significant importance to the State's case. McKeithen testified that Engram provided him with concerning information about his cellmate, Martin-Argaw. McKeithen did not testify as to what the information was, but simply stated that he forwarded the information to the district attorney's office. Second, McKeithen's testimony was cumulative with that of Engram, who testified that after Martin-Argaw asked him if he knew someone who could kill Martin, Engram initially spoke with a deputy at the jail and McKeithen about it and cooperated with the detectives who investigated the matter.

Third, McKeithen's testimony was corroborated by Engram, Detective Smith, and the undercover investigator. Fourth, Martin-Argaw was allowed to cross-examine McKeithen about the ultimate deal that Engram received.

Finally, the evidence against Martin-Argaw was overwhelming. Martin-Argaw was in jail because he had tried to kill Martin, who testified in detail to the events of July 12, 2006. The jury heard extensive testimony of Martin-Argaw's attempt to hire

---

[10] *Delaware v. Van Arsdall*, 475 U. S. 673, 684 (106 SCt 1431, 89 LE2d 674) (1986).

7

a hit man to kill Martin, her son, and Vanderpool through the testimony of Engram, Detective Smith, and the undercover investigator. In addition, the recorded conversations between Martin-Argaw and the investigator, posing as a hit man, were played for the jury. The jury also saw the video of the custodial interview and viewed the handwritten notes found in Martin-Argaw's cell. Based on the foregoing, the State proved beyond a reasonable doubt that the error did not contribute to the verdict.[11]

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

[11] See *Collum v. State*, 281 Ga. 719, 719-721 (1) (642 SE2d 640) (2007); *Hawkins v. State*, 316 Ga. App. 415, 419 (2) (a) (729 SE2d 549) (2012).