In the Supreme Court of Georgia

Decided: March 7, 2016

S16A0058. OWENS v. THE STATE.

MELTON, Justice.

Following a jury trial, Marian Papacsi Owens appeals her conviction for the felony murder of Tommy Janes, contending, among other things, that her right to proceed pro se was violated and that she received ineffective assistance of counsel.[1] For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on the evening of December 22, 2011, Owens spent the night at Janes's home. The following morning, William Crane, Janes's neighbor, investigated loud noises he heard from Janes's home. Through a window, Crane saw Janes lying

---

[1] On January 6, 2012, Owens was indicted for malice murder, felony murder predicated on aggravated assault, and aggravated assault. Following a jury trial ending on August 9, 2013, Owens was found guilty of all charges. On August 23, 2013, the trial court sentenced Owens to life imprisonment. [Deletion]. Owens filed a motion for new trial on September 19, 2013, and amended it on April 24, 2015. The motion was denied on June 29, 2015, and, following the filing of a timely notice of appeal, Owens's case was docketed to the January 2016 Term of this Court and submitted for decision on the briefs.

on the floor. Completely nude, Owens was straddling Janes and beating him with a metal nutcracker. By that time, Owens had already stabbed Janes, who was fully clothed, multiple times in the back. When police arrived, Owens was being combative, acting erratically, and singing about Jesus and the devil. At trial, after being found to be competent, Owens admitted that she killed Janes, though she contended that she was not coherent for a large portion of the events that night.

This evidence was sufficient to enable the jurors to find Owens guilty of the crimes for which she was tried and found guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Owens contends that the trial court erred by not allowing her to fire her attorney mid-trial and proceed pro se. Based on the facts of this case, we disagree.

We have previously explained:

Both the federal and state constitutions guarantee a criminal defendant the right to self-representation. See Faretta v. California, 422 U.S. 806 (95 SCt 252, 45 LE2d 52) (1975); 1983 Ga. Const., Art. I, Sec. I, Par. XII. An unequivocal assertion of the right to represent oneself, made *prior* to trial, should be followed by a hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of

2

self-representation.  Faretta, 422 U.S. at 836; Strozier v. Newsome, 871 F2d 995 (11th Cir.1989). See also Potts v. State, 259 Ga. 812 (388 SE2d 678) (1990); Williams v. State, 169 Ga. App. 812, 814 (315 SE2d 42) (1984).

(Emphasis supplied.) Thaxton v. State, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990). Requests to proceed pro se *during* trial, however, are treated differently. In Thaxton, the defendant waited until the State had finished with several witnesses prior to making a request to proceed pro se. We held: "[A] request made after the testimony of the State's third witness[] cannot serve as the basis for reversal since a defendant 'cannot frivolously change his mind in midstream' by asserting his right to self-representation in the middle of his trial. Preston v. State, 257 Ga. 42 (3) (354 SE2d 135) (1987)." Id. at 142 (2).

In this case, the record shows that Owens expressed a desire to dismiss her attorney and represent herself prior to trial. At a pre-trial conference, a Farreta hearing was conducted, and the trial court granted Owens's request, while retaining her counsel for standby assistance only. As pre-trial proceedings continued, however, Owens changed her mind again. She requested that counsel be reinstated to represent her at trial. The trial court granted this request as well, and Owens began her trial with representation. Well into the second day of trial,

3

after the State had called many witnesses, Owens began acting unruly in the courtroom, especially when pictures, testimony, and a recorded interview regarding her appearance and behavior at the time of the murder were introduced. Owens eventually expressed her displeasure with the evidence and stated that she would take no part in the trial. In addition, she expressed a desire to have trial counsel dismissed. After considering Owens's outburst, the trial court decided that it would allow Owens to monitor the trial from a holding cell with a walkie-talkie, but it denied her request to proceed without any representation at all. One witness later, Owens requested that she be allowed to return to the courtroom, and, once there, she apologized for her behavior and stated that she had been acting inappropriately. Later, she confirmed that she had not been thinking clearly and that she wanted and needed the assistance of trial counsel.

Under these circumstances, it cannot be said that the trial court erred in its decision to (1) deny Owens's request to fire her counsel and (2) grant her request to absent herself from the courtroom. The trial court indicated that it did so in order to protect Owens's "best interests." Given Owens's pre-trial equivocation, her outbursts during trial, and her own statements indicating that

she never truly wished to finish the trial without the assistance of trial counsel, Owens's decision to change her mind about counsel midstream was, at best, a frivolous response to the introduction of evidence which disturbed her. As such, the trial court did not violate Owens's right to proceed pro se under the circumstances presented here. Thaxton, supra.

2. Owens contends that the trial court erred by allowing her to testify at trial, contending that she was not sufficiently competent to knowingly waive her right to remain silent. The record shows that experts found Owens competent to stand trial prior to the proceedings, and the trial court engaged in a full and extensive colloquy with Owens about her right to remain silent before she took the stand at trial. Owens responded clearly that she understood all of her rights. In addition, Owens asked specific questions about her rights which indicated both that she understood what those rights were and how they would play out during the proceedings. Furthermore, trial counsel informed the court on the record that he had discussed the right to remain silent with Owens and that he had strongly recommended to her that she should not testify. Owens, however, stated that she had listened to this advice, but chose to reject it.

"In Georgia, whether or not to testify in one's own defense is considered

a tactical decision to be made by the defendant . . . after consultation with his trial counsel and there is no general requirement that a trial court interject itself into that decision-making process. Burton v. State, 263 Ga. 725, 728 (438 SE2d 83) (1994). See also OCGA §§ 17–7–28 [and 24-5-506] (b)." (Footnotes omitted.) Mobley v. State, 264 Ga. 854, 856 (2) (452 SE2d 500) (1995). Therefore, the record shows that Owens knowingly waived her right against self-incrimination and exercised her right to testify at trial after being fully informed of the consequences.

3. Owens contends that her trial counsel rendered ineffective assistance because he did not refrain from asking her questions after she decided to take the stand in her own defense. Owens argues that, by asking Owens questions, trial counsel somehow abdicated his duty to his client. This argument is misplaced.

> In order to succeed on [her] claim of ineffective assistance, [Owens] must prove both that [her] trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's

6

decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

The record shows that, although trial counsel advised her not to do so, Owens made the decision to testify at trial. Because trial counsel was concerned that Owens's testimony would harm her case, he initially informed the trial court that he intended to question Owens by inviting a narrative. The State objected, and the trial court sustained the objection because the situation was not one in which testimony by narrative was permissible. See, e.g., Miller v. State, 295 Ga. 769 (2) (b) (764 SE2d 135) (2014) (defendant allowed to testify in the narrative when trial counsel believes defendant intends to commit perjury). A review of the transcript shows that trial counsel carefully asked Owens a series of questions that allowed her to recount the incident in question in a chronological manner. Trial counsel also asked questions that provided at least some facts that assisted in his argument that Owens acted in response to Janes's sexual advances, including Owens's testimony that Janes grabbed her buttocks forcefully. The transcript, therefore, indicates that trial counsel did not abdicate

7

his duty to his client. Quite the opposite, he strategically questioned Owens to both honor her right to testify and preserve her defense to the extent possible. Accordingly, trial counsel's performance was not deficient in this case. Id.

Judgment affirmed. All the Justices concur.