305 Ga. 508
FINAL COPY

S19A0180. COAST v. THE STATE.

ELLINGTON, Justice.

Following a jury trial, Jerome Coast was convicted of malice murder and possession of a firearm by a convicted felon during the commission of a crime in connection with the shooting death of Michael James.[1] Coast appeals, contending that the trial court abused its discretion by denying his request to represent himself on the sole basis that the request came after his trial had begun. Finding no error, we affirm.

---

[1] The crimes occurred on April 8, 2014. On July 2, 2014, Coast was indicted for malice murder (Count 1), felony murder predicated on aggravated assault of James (Count 2), possession of a firearm during the commission of a felony (OCGA § 16-11-106) (Count 3), felony murder predicated on possession of a firearm by a convicted felon (Count 4), and possession of a firearm by a convicted felon during the commission of a crime (OCGA § 16-11-133) (Count 5). Following a May 23-27, 2016 jury trial, Coast was found guilty on all counts. On August 3, 2016, the trial court sentenced Coast to life imprisonment for malice murder (Count 1) and fifteen years' imprisonment to run consecutively for possession of a firearm by a convicted felon during the commission of a crime (Count 5). The court did not enter sentences on the remaining counts, which were either vacated as a matter of law or merged, *Atkinson v. State*, 301 Ga. 518, 520-521 (2) (801 SE2d 833) (2017); *Jones v. State*, 318 Ga. App. 105, 109-110 (6) (733 SE2d 407) (2012). Coast filed a motion for new trial on August 4, 2016, which he amended on November 17, 2017, with the assistance of new appellate counsel. After a December 8, 2017 hearing, the court denied the motion on March 30, 2018. Coast filed a timely notice of appeal from the March 30, 2018 order, and his appeal was docketed in this Court for the term beginning in December 2018 and submitted for decision on the briefs.

Viewed in the light most favorable to the prosecution, the evidence presented showed the following. In April 2014, Jerome Coast lived with his grandmother and a family friend, Lee Tremble, on Sylvan Drive in Chatham County. On April 7, around 11:15 p.m., the victim, Michael James, went to Coast's home to watch football with Tremble. A few minutes later, Coast arrived, having been dropped off by his girlfriend, Kenywana Moore. During the drive, Coast told Moore that James owed him money. When Coast arrived, Tremble saw that Coast had a gun tucked into his waistband. About 11:45 p.m., James and Coast left the house together in a white Chevrolet Tahoe, with James driving. Minutes later, the Tahoe crashed into another vehicle in a residential driveway on West 58th Street. Responding officers found James, unresponsive, in the driver's seat of the wrecked vehicle. He had multiple gunshot wounds, primarily to the right side of his face; he was pronounced dead at the scene.

At about midnight, Coast knocked on the door of the home of his friend, Samson Dash, who lived nearby on South Baldwin Road. Out of breath, Coast told Dash that he had been in a car wreck, was running from the police, and needed a change of clothes. Dash gave him clothes, and Coast left the pants he

had been wearing in Dash's recycling bin. Coast called Moore at about 12:15 a.m. and asked her to come get him. When Moore picked up Coast from Dash's house, she noticed he had changed clothes in the short time they had been apart. Coast told Moore that he shot and killed James and that he knew he "f\*\*ked up." During the following days, Coast demanded money from Moore and threatened to kill her and take her children if she did not help him. Fearing for her family's safety, Moore contacted the police, reported what she knew about James's death, and identified Coast in a photo lineup as the person who told her he killed James that night. After Coast was arrested, investigators recovered Coast's pants from Dash's recycling bin; forensic testing showed that the pants were stained with James's blood.

1. Coast does not challenge the sufficiency of the evidence. Nevertheless, as is our customary practice in murder cases, we have independently reviewed the record and conclude that the evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Coast was guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Coast contends that the trial court erred in denying his request to represent himself on the sole basis that the request came after his trial had begun.

Both the federal and state Constitutions guarantee a criminal defendant the right to self-representation.[2] An unequivocal assertion of the constitutional right to represent oneself, made prior to trial, should be followed by a hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation. *Owens v. State*, 298 Ga. 813, 814-815 (2) (783 SE2d 611) (2016); *Lamar v. State*, 278 Ga. 150, 152-153 (1) (598 SE2d 488) (2004); *Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990). A defendant is not entitled, however, to "frivolously change his mind in midstream" or to assert his right to self-representation in the middle of his trial for purposes of disrupting the trial. *Thaxton*, 260 Ga. at 142 (2) (citation and punctuation omitted). See also *Owens*, 298 Ga. at 814-815 (2);

---

[2]    See *Faretta v. California*, 422 U. S. 806, 818-821 (III) (A) (95 SCt 2525, 45 LE2d 562) (1975) (The Sixth Amendment of the Constitution of the United States guarantees that a defendant in a state criminal trial has the right of self-representation and that he may proceed to defend himself without counsel when he voluntarily and intelligently elects to do so.); Ga. Const. 1983, Art. I, Sec. I, Par. XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state.").

4

*Preston v. State*, 257 Ga. 42, 44-45 (3) (354 SE2d 135) (1987).

In this case, Coast first asserted his right to represent himself near the end of the State's case-in-chief, when he disagreed with defense counsel about certain evidence. Specifically, the record shows that, before trial, Coast's retained counsel successfully moved in limine to exclude evidence about an incident in which Coast demanded $8,000 from his girlfriend, Moore, at gunpoint. On the third day of the trial, a detective, who was the State's eighteenth and final witness, testified on cross-examination that Moore told him in her initial interview that she and Coast had "issues with money." Out of the presence of the jury, the prosecutor raised the issue whether vague testimony about money issues had opened the door to evidence that Coast had in fact demanded and received large sums of money from her, once at gunpoint. Before the issue was resolved, Coast interjected that he did not mind if evidence was admitted that Moore told law enforcement that he robbed her. Based on defense counsel's representations of his intended argument on the subject, however, the prosecutor elected not to ask any follow-up questions concerning money issues between Coast and Moore. Coast continued to insist that he wanted the evidence

5

to come in, even while the jury was being brought back into the courtroom. After a few additional questions to the detective about Moore's demeanor when he interviewed her, the State rested.

With the State's case-in-chief completed, the jury retired to the jury room, and the trial court turned to the issue of whether Coast would testify. After explaining that it was Coast's decision and outlining what would happen under either scenario, the court asked Coast whether he had made his decision about testifying. Coast stated that he would testify. Then, he asked, "Can I move to fire my lawyer, and act as my own lawyer and just have [defense counsel's] assistance? . . . [H]e did a great job. Don't get me wrong. . . . I'm just saying for the rest of the case on." The trial court stated that being represented by counsel was the better path for Coast at that point, and Coast acquiesced at first. Minutes later, when the court was instructing defense counsel to advise Coast to comport himself appropriately while he was on the stand, Coast interjected, "Can I fire my lawyer then?" The court responded, "No, you may not," and moved on to a discussion with counsel about jury instructions.

Just before court recessed for the day, defense counsel brought to the

court's attention that Coast had said a couple of times that afternoon that he wanted to fire counsel and stated that, "to perfect the record," Coast's "rights need to be explained to him." The court asked Coast about his level of education and explained that there would be limits on what he could say while representing himself. The court told Coast to talk it over with his counsel and indicated that the court would take up the matter the next day. Coast responded that he wanted counsel to handle motions (no motion for directed verdict had yet been made) and questioning during his own testimony and then he wanted to do his own closing argument. The court stated that he could not represent himself and have a lawyer at the same time. The court recessed for the day, and, later that evening, Coast sent his defense counsel a letter, saying that he wanted to immediately terminate the attorney-client relationship and that he was requesting new counsel. When court reconvened the next day, the trial court told Coast that his request to represent himself was denied, because the request was made mid-trial and because he wanted to handle part of his representation and have counsel handle other parts of it. Coast asked if he could fire his counsel instead and represent himself for the rest of his cross-examination and his closing argument

with no further participation by his lawyer. The court reiterated that his request was denied. The jury returned to the courtroom, and defense counsel represented Coast to the conclusion of the trial.

On appeal, Coast contends that his assertion of his right to self-representation while the trial was in progress was not frivolous. Rather, he argues, his desire to proceed pro se originated from his disagreement with his counsel about whether evidence that he had previously robbed Moore should be admitted. In addition, he contends that his multiple requests to represent himself were unequivocal and that allowing him to represent himself was not likely to disrupt the trial, given that the State had rested and the remaining components of the case were limited to his testimony, the closing arguments, and the jury charge. Under these circumstances, he contends, the trial court erred in summarily denying his requests without a basis for the denial other than that the requests were not made sooner.

The record does not support Coast's contention that the trial court denied his requests to represent himself solely on the basis that they were not made sooner. In the order denying Coast's motion for a new trial, the court expressly

found that his requests were equivocal and frivolous, as well as untimely. Moreover, the record supports the trial court's finding that Coast's request was equivocal. First, Coast initially proposed a form of hybrid representation, in which he would act much like a co-counsel. Such a request is not an unequivocal assertion of the right to represent oneself, and a trial court is not required to grant such a request. *Owens*, 298 Ga. at 814-815 (2); *Potts v. State*, 259 Ga. 812, 815 (4) (388 SE2d 678) (1990). Coast's equivocation was compounded when, in his letter purporting to terminate counsel's representation, he stated he was requesting new counsel — not that he wanted to represent himself. In addition, the record shows that Coast exhibited disruptive behavior at several points during the trial, including a number of outbursts in the presence of the jury. Given that Coast equivocated about self-representation, engaged in a pattern of disruptive behavior during trial, and decided to proceed pro se because of his disagreement with his counsel's strategy about the cross-examination of the State's final witness, the record shows that Coast's decision to change his mind about counsel midstream was, at best, a frivolous response to the omission of evidence that he thought would help the defense. See *Owens*,

9

298 Ga. at 815-816 (2) (finding that, given the defendant's "pre-trial equivocation [about representation], her outbursts during trial, and her own statements indicating that she never truly wished to finish the trial without the assistance of trial counsel, [her] decision to change her mind about counsel midstream was, at best, a frivolous response to the introduction of evidence which disturbed her"). Under the circumstances presented here, the trial court did not violate Coast's right to represent himself, and the denial of his mid-trial request to proceed pro se provides no basis for the reversal of his criminal convictions. Id.

Judgment affirmed. All the Justices concur.

Decided March 11, 2019.

Murder. Chatham Superior Court. Before Judge Freesemann.

Robert L. Persse, for appellant.

Meg E. Heap, District Attorney, Isabel M. Pauley, Bradley R. Thompson, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.