**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J. and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 3, 2022**

# In the Court of Appeals of Georgia

A21A1189. ALRED v. GEORGIA PUBLIC DEFENDER COUNCIL.

DILLARD, Presiding Judge.

Jessica Alred appeals from the trial court's dismissal of her suit for legal malpractice against the Georgia Public Defender Council ("GPDC"), arguing the trial court erred in doing so when it concluded that her tort claims were barred by sovereign immunity. For the reasons set forth *infra*, we reverse the trial court's dismissal and remand this case for further proceedings consistent with this opinion.

A motion to dismiss asserting sovereign immunity is "based upon the trial court's lack of subject-matter jurisdiction, rather than the merits of the plaintiff's claim."[1] Sovereign immunity is not an affirmative defense, going to the merits of the

---

[1] *Ambati v. Bd. of Regents*, 313 Ga. App. 282, 283 n.3 (721 SE2d 148) (2011) (punctuation omitted); *see* OCGA § 9-11-12 (b) (1) ("Every defense, in law or fact,

case, but "raises the issue of the trial court's subject-matter jurisdiction to try the case."[2] Importantly, a waiver of sovereign immunity "must be established by the party seeking to benefit from that waiver; thus, the plaintiffs [have] the burden of establishing waiver of sovereign immunity."[3] As a result, when reviewing a trial court's ruling on a motion to dismiss on such a basis, we do so *de novo* while sustaining factual findings if they are supported by any evidence.[4]

---

to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may, at the option of the pleader, be made by motion in writing: (1) Lack of jurisdiction over the subject matter[.]"); *Love v. Fulton Cty. Bd. of Tax Assessors*, 311 Ga. 682, 690 (1) n.5 (859 SE2d 33) (2021) ("[T]he applicability of sovereign immunity is a threshold determination, and, if it does apply, a court lacks jurisdiction over the case and, concomitantly, lacks authority to decide the merits of a claim that is barred.").

[2] *Ambati*, 313 Ga. App. at 283 n.3 (punctuation omitted).

[3] *Id.*; *see Ga. Dep't of Lab. v. RTT Assocs., Inc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016) ("The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it."); *Cowart v. Ga. Dep't of Hum. Servs.*, 340 Ga. App. 183, 183 (796 SE2d 903) (2017) ("[T]he party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver.").

[4] *See RTT Assocs., Inc.*, 299 Ga. at 81 (1) ("Whether sovereign immunity has been waived under the undisputed facts of this case is a question of law, and this Court's review is de novo."); *Ga. Dep't of Natural Res. v. Ctr. for a Sustainable Coast, Inc.*, 294 Ga. 593, 596 (2) (755 SE2d 184) (2014) (noting that the issue of sovereign immunity is a question of law which is reviewed *de novo*); *Beasley v. Ga. Dep't of Corr.*, 360 Ga. App. 33, 34 (861 SE2d 106, 108) (2021) ("We review de

At the outset, we acknowledge that whether GPDC may be sued for professional negligence and legal malpractice appears to be an issue of first impression in Georgia[5]—although other states have tackled similar questions.[6]

novo the trial court's ruling on this motion to dismiss because the question of sovereign immunity is one of law, but we are required to sustain the court's factual findings if they are supported by any evidence."); *Bd. of Trustees of Ga. Military College v. O'Donnell*, 352 Ga. App. 651, 651 (835 SE2d 688) (2019) ("We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is evidence supporting them[.]" (punctuation omitted)).

[5] Our Supreme Court has considered professional negligence claims—*i.e.*, *medical* malpractice claims—against other state entities and concluded that "the decision of state employees on the type of emergency medical care to provide incarcerated juveniles does not fall within the discretionary function exception to the Georgia Tort Claims Act." *Edwards v. Dep't of Child. & Youth Servs.*, 271 Ga. 890, 892 (525 SE2d 83) (2000); *accord Shekhawat v. Jones*, 293 Ga. 468, 473 (746 SE2d 89) (2013).

[6] *Compare Laughlin v. Perry*, 604 SW3d 621, 633 (Mo. 2020) (holding that public defenders were entitled to official immunity due to status as public employees and duties concerning discretionary acts); *Nieves v. Off. of the Pub. Def.*, 230 A3d 227, 235 (III) (C) (N.J. 2020) (holding that despite duty owed to individual represented, public defenders are public employees entitled to benefit of state tort claims act that "places conditions and limits on the ability to recover damages in such settings"); *Jacobi v. Holbert*, 553 SW3d 246, 259 (III) (D) (3), 261 (III) (E) (Ky. 2018) (discerning "no reason to exempt public defenders from the immunity process while prosecutors and judges receive the benefit of the defense" and, additionally, concluding that facts of the case involved public defender engaging in the discretionary function of providing legal advice to the client); *Bradshaw v. Joseph*, 666 A2d 1175, 1178 (Vt. 1995) (holding that "public defenders are state employees under Vermont law and are entitled to the same [statutory] protection . . . as other

But here, both parties agree that the Georgia Tort Claims Act waives immunity for

state employees"); *Browne v. Robb*, 583 A2d 949, 951 (A) (Del. 1990) (reiterating prior holding that a "public defender is protected by qualified immunity under the State Tort Claims Act"); *Ramirez v. Harris*, 773 P2d 343, 344-45 (Nev. 1989) (construing statutes before concluding that appellees could not "be sued for malpractice arising out of discretionary decisions that they made pursuant to their duties as public defenders"), *with Barner v. Leeds*, 13 P3d 704, 713 (II) (Cal. 2000) (holding that public defender was not entitled to immunity after concluding "that the immunity conferred by [the discretionary acts exception] does not extend to the acts of a deputy public defender in representing a criminal defendant"); *Johnson v. Halloran*, 742 NE2d 741, 744 (Ill. 2000) (concluding that public defenders were not entitled to immunity from legal malpractice claims brought by former client; although attorneys were county employees, no specific statutory immunity existed for them at the time of the events giving rise to the cause of action); *Reese v. Danforth*, 406 A2d 735, 740 (Pa. 1979) (perceiving "no principled basis for differentiating between public defenders and privately retained and paid counsel" to conclude that public defenders were not entitled to the same immunities from suit as other publicly-funded employees). *See Wallin v. McCabe*, 293 P3d 81, 83 (II) (B) (Colo. App. 2011) (concluding, as an issue of first impression, that "employees of the state public defender's office are employees of a public entity, and, therefore, 'public employees'" under the Colorado Governmental Immunity Act; thus, public defenders were entitled to notice of a claim un that act); *Wright v. Elston*, 701 NE2d 1227, 1232 (3) (Ind. Ct. App. 1998) (explaining that, as recognized by prior decision, public defenders were not included within the definition of "employee" within state tort claims act, and that after prior decision, state legislature amended definition so as to include "attorneys at law whether employed by the governmental entity as employees or independent contractors"). GPDC opposed Alred's motion to add Love as a named party to the action, contending that she was entitled to immunity under the GTCA. The trial court ultimately denied Alred's motion to add Love as a named party, concluding that she was entitled to official immunity as GPDC asserted. *See* OCGA § 50-21-25 (a), (b). As a result, no issue of official immunity is before us on appeal, nor are we called upon to decide any questions of immunity as it may or may not be applied to *circuit* public defender offices.

GPDC subject only to the delineated exceptions.[7] Indeed, GPDC *admits* that it is a government entity as defined in the GTCA and can be held liable under that statute, subject to that Act's exceptions. And GPDC does not claim any other statute provides it with immunity for the relevant claims.[8] So, for purposes of this appeal, we accept GPDC's concessions and address only the issues raised by the parties in their briefs.

---

[7] *See* OCGA § 50-21-23 ("The state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article."); OCGA § 50-21-22 (5) ("'State' means the State of Georgia and any of its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions, but does not include counties, municipalities, school districts, other units of local government, hospital authorities, or housing and other local authorities."); OCGA § 50-21-24 (providing thirteen exceptions for which the state shall have no liability under the GTCA). In this regard, the parties do not dispute that GPDC is a state agency. *See* OCGA § 17-12-1 (b) ("The Georgia Public Defender Council shall be an independent agency within the executive branch of state government."); *accord Roberson v. State*, 300 Ga. 632, 634 (II) (797 SE2d 104) (2017).

[8] *See* OCGA § 17-12-10.2 ("The members of the council as created by this article, the members of the circuit public defender supervisory panel created by Article 2 of this chapter, and other policy-making or administrative personnel acting in a policy-making or administrative capacity shall not be subject to civil liability resulting from any act or failure to act in the implementation and carrying out of the purposes of this chapter.").

5

With the foregoing in mind, the record shows that on March 17, 2020, Alred filed a complaint for damages against GPDC. The basis for this suit began on July 22, 2016, when she was charged in Dougherty County Superior Court with two counts of financial transaction card fraud, a felony. Alred appeared *pro se* at her October 2016 arraignment and, *inter alia*, provided both the court and district attorney with her current mailing address on the "Waiver of Arraignment."

Thereafter, Alred appeared *pro se* at a November 7, 2016 *Faretta* hearing,[9] and at that time, completed an application to be represented by the Dougherty County Public Defender's office. On the application, she again listed her mailing address. And that same day, she was interviewed, filled out a client-information sheet, and agreed to pay a $50 application fee for the public defender office's services. Nevertheless, Alred was never provided notice of being appointed an attorney.

---

[9] A *Farretta* hearing is conducted to ensure the defendant "knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation." *Woodard v. State*, 352 Ga. App. 322, 328 (2) (835 SE2d 35) (2019) (punctuation omitted); *accord Owens v. State*, 298 Ga. 813, 814 (2) (783 SE2d 611) (2016); *Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990); *Hillsman v. State*, 341 Ga. App. 543, 549-50 (4) (802 SE2d 7) (2017); *see Faretta v. California*, 422 U.S. 806 (95 SCt 2525, 45 LE2d 562) (1975).

Alred's case was subsequently placed on a trial calender and called on or about June 28, 2017; but the court clerk's office used a previous address for Alred on the notice for her to appear, and the notice was later returned as undeliverable. At that calendar call, neither Alred nor any attorney from the Dougherty County Public Defender's Office appeared on her behalf, resulting in a bench warrant and Alred's eventual arrest. Then, on December 21, 2017, Alred wrote a letter "to whom it may concern" at the Dougherty County Public Defender's Office regarding her incarceration and lack of counsel. She requested that an attorney come see her as soon as possible.

It was not until January 10, 2018, that Carmen Love, a public defender, filed an entry of appearance on Alred's behalf and a motion for bond, and attended a hearing on the motion on January 29, 2018. But this motion was denied based upon Alred's failure to appear at the earlier calendar call, leading the trial court to consider her a flight risk. Alred alleged that due to a failure to look into her file, Love did not realize Alred never received the notice to appear at the calendar call because it was mailed to an old address. And indeed, at the time of the bond hearing, Love had never met with or even spoken to Alred, and only did so once on February 21, 2018.

Thereafter, Alred was released from incarceration upon hiring substitute counsel, who established the reason for Love's failure to appear at the calendar call.

Based upon the foregoing facts, Alred made claims and sought damages against Love and her employer for professional negligence, negligent supervision, and breach of contract.[10] She attached to her complaint an affidavit from James Finkelstein, an attorney, who claimed that after concluding that Love "had effectively abandoned her client," he filed an entry of appearance on her behalf on March 7, 2018. Alred initially called Finkelstein at random to obtain assistance in contacting the Dougherty County Public Defender's Office because she had been unsuccessful in her own attempts to do so while incarcerated. Finkelstein then drafted an email to that office

---

[10] Alred does not argue the trial court erred in granting the motion to dismiss on her claim for breach of contract and, thus, she has abandoned any such contention on appeal. *See Grogan v. City of Dawsonville*, 305 Ga. 79, 89 (4) n.7 (823 SE2d 763) (2019) (explaining that the Court will not address potential issue or argument that appellant did not raise on appeal); *Rollins v. Legg*, 179 Ga. 85, 85 (2) (175 SE 382) (1934) ("The petition prayed for attorney's fees on account of bad faith and litigiousness on the part of the sheriff. The plaintiff in his brief does not argue his alleged right to an award of attorney's fees, and this feature of the case is treated as having been abandoned." (emphasis supplied)); *Jones v. Bd. of Regents of Univ. Sys. of Ga.*, 262 Ga. App. 75, 79 (3) (585 SE2d 138) (2003) (deeming issue not argued on appeal abandoned).

8

on January 8, 2018, but received no response. And even after Love filed her entry of appearance on January 10, 2018, Alred was unable to contact Love via telephone due to a standard practice in the public defender's office that prohibited answering or accepting phone calls from incarcerated individuals.

On February 20, 2018, Alred again contacted Finkelstein because—although she now knew Love was her appointed attorney—she had not yet been contacted by Love. As a result, Finkelstein again contacted the public defender's office via email on Alred's behalf. Love then visited Alred the following day, but Finkelstein also met with Alred after Love explained to Alred that she would enter into a guilty plea in April but would remain incarcerated until that time. Thus, Finkelstein made his own entry of appearance on March 7, 2018, and Love obtained an order relieving her of any further obligations to Alred on March 15, 2018.

Following his entry of appearance, Finkelstein filed a motion for bond, and on March 18, 2018, the State consented to an order for a recognizance bond for Alred. Thereafter, Alred accepted a negotiated plea to reduced counts of two misdemeanors with a total sentence of 18 months' probation and a $100 fine.

In addition to the foregoing, Finkelstein averred that after receiving a copy of Alred's file from the circuit defender on August 18, 2018, he learned, *inter alia*, that on Alred's application for representation by the Dougherty County Public Defender's Office, she provided her correct and current mailing address. Further, in handwriting different from Alred's, the name of the assigned judge was written on the application along with the name "Carmen," and Carmen Love was one of two public defenders assigned to the judge's courtroom. Additionally, although a document in the public defender office's file showed a notation of "calendar call" for June 28, 2017, and a trial date of July 10, 2017, as of those dates, Love still had not filed an entry of appearance on Alred's behalf.

Based on these facts, Finkelstein stated his opinion that Love breached the standard of care owed to Alred by (1) violating Uniform Superior Court Rule 4.2 regarding filing an entry of appearance,[11] (2) failing to inform the court that Alred's

---

[11] Uniform Superior Court Rule 4.2 provides, *inter alia*, that "[w]ithin forty-eight hours after being retained, an attorney shall mail to the court and opposing counsel or file with the court the entry of his appearance in the pending matter. Failure to timely file shall not prohibit the appearance and representation by said counsel." Additionally, OCGA § 17-12-23 (b) provides, *inter alia*, that "entitlement to the services of counsel begins not more than three business days after the indigent person . . . makes an application for counsel to be appointed." And Uniform Superior Court Rule 29.2 provides that

[u]pon a determination of indigency the court shall, in writing, authorize

10

notice to appear was sent to the wrong address, (3) failing to visit Alred earlier, (4) failing to inform the assigned prosecutor that Alred did not receive notice of the calendar call, (5) failing to investigate the allegations against Alred, and (6) failing to provide Alred with copies of the pleadings.

Finkelstein further stated his opinion that Love's employer breached its standard of care by (1) failing to ensure that Love filed an entry of appearance, (2) failing to ensure that Love met with Alred after she requested a meeting, (3) refusing to accept calls from incarcerated individuals, and (4) not requiring attorneys, such as Love, to provide a current email address and telephone number on the state bar directory.

In response to Alred's claims, GPDC asserted, *inter alia*, that the suit was barred by sovereign immunity and proceeded to file a motion to dismiss on this same basis. In support, GPDC argued that sovereign immunity barred the claims (1) under

the appointment of counsel for the indigent accused. The original authorization of appointment shall be filed with the indictment or warrant in the case; a copy of the authorization shall be forwarded to the clerk, court administrator, public defender or such other person designated by the court to assign an attorney to an indigent defendant. Such person shall notify the accused, the appointed attorney, the sheriff and the district attorney of the appointment.

11

the false-arrest and false-imprisonment exception, and (2) because Alred had no valid written contract for representation. On February 3, 2021, the trial court granted the motion to dismiss. It did so after concluding that Alred was *not* making a tort claim of false arrest or false imprisonment but, instead, that sovereign immunity barred her claims for professional negligence and legal malpractice because those claims were based upon discretionary functions. This appeal follows.

Alred argues the trial court erred in granting the motion to dismiss by concluding that—even though it was never argued by the GPDC—the complained-of acts were excepted from the Georgia Tort Claims Act as discretionary functions. In response, GPDC *agrees* the trial court erred in granting the motion to dismiss on the ground that the acts were discretionary functions,[12] but nevertheless maintains that we should affirm because the false-imprisonment and false-arrest exceptions of the GTCA *do* apply.[13] We turn now to these contentions.

---

[12] GPDC contends this finding was premature.

[13] This Court may affirm a trial court's grant of a motion to dismiss if it is right for any reason, so long as the argument was fairly presented to the court below. *See GeorgiaCarry.Org. Inc. v. Bordeaux*, Case No. A21A0833, __ Ga. App. __, __ (2) n.3 (861 SE2d 649, 653 (2) n.3) (Ga. App. July 22, 2021) ("While it appears that the trial court granted the motion to dismiss because the controversy was moot rather than based upon a hypothetical or future contingency, we will affirm the court if it is right for any reason."); *Cook Pecan Co. v. McDaniel*, 337 Ga. App. 186, 192 (3) (b) (786

Under the Georgia Constitution, the sovereign immunity of our state "may be waived only as provided by the [General Assembly] in a tort claims act or an act of the [General Assembly] which specifically provides that sovereign immunity is waived and the extent of such waiver."[14] And under this authority, our General Assembly enacted the GTCA, which provides, in relevant part, that

---

SE2d 852) (2016) ("We may affirm the trial court's grant of summary judgment if it is right for any reason, whether stated or unstated, so long as the legal basis was fairly presented in the court below."). *Cf. Ga.-Pac., LLC v. Fields*, 293 Ga. 499, 503 (2) (748 SE2d 407) (2013) (holding that "right for any reason" rule could not be used to affirm when alternative basis relied upon by Court of Appeals had not been raised in the motion for summary judgment).

[14] *Youngblood v. Gwinnett Rockdale Newton Cmty. Srvc. Bd.*, 273 Ga. 715, 716 (2) (545 SE2d 875) (2001); *see* GA. CONST., Art. I, Sec. II, Par. IX (d) ("Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived."); GA. CONST., Art. I, Sec. II, Par. IX (e) ("Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.").

[t]he state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article.[15]

One exception to the general GTCA waiver provides that the State is not liable for losses resulting from "[a]ssault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contractual rights[.]"[16] And as previously noted, the trial court concluded that this exception did not apply so as to bar Alred's suit, instead granting the motion to dismiss on another exception. But on appeal, GPDC relies solely on the false-imprisonment and false-arrest exceptions of the GTCA to justify its motion to dismiss being granted.[17] This argument is a nonstarter.

---

[15] OCGA § 50-21-23 (a).

[16] OCGA § 50-21-24 (7).

[17] *See supra* note 13 & accompanying text.

14

The trial court correctly concluded that the false-imprisonment and false-arrest exceptions of the GTCA do not bar Alred's claims. Once again, Alred was incarcerated after the trial court issued a bench warrant for her arrest when she failed to appear for a calendar call, and the trial court was permitted to issue such a warrant by law.[18] Indeed, the court clerk's office mailed notice of the calendar call to Alred's former address, which was the address the clerk's office had on file. But Alred argues that the professional negligence of Love and her employer resulted in (1) Love's failure to receive notice about the calendar call and inform Alred of same; (2) Love's failure to appear at the calendar call on Alred's behalf; (3) Alred's incarceration and inability to explain to the trial court why she failed to appear at the calendar call; and (4) Love's failure to notice that the clerk's office had an outdated address for Alred.[19]

---

[18] *See* OCGA § 17-7-90 (a) (2) (B) ("A bench warrant may be issued by a judge for the arrest of a person: . . . (2) Except as otherwise provided in Code Section 17-6-11, charged with a crime who has failed to appear in court after: . . . (B) Notice of the time and place to appear to the person by mailing a notice to such person's last known address[.]").

[19] Also, as the trial court noted in its order, false arrest and false imprisonment are *intentional* torts, not acts of negligence. *See, e.g.*, *Stewart v. Williams*, 243 Ga. 580, 582 (1) (255 SE2d 699) (1979) (noting that false imprisonment is an intentional tort); *Healthcare Staffing, Inc. v. Edwards,* 360 Ga. App. 131, 134 (1) n.3 (160 SE2d 874) (2021) (noting that false arrest is an intentional tort).

15

Thus, Alred does not contend that she was unlawfully arrested or held, and the trial court correctly denied the motion to dismiss on this ground.[20]

But despite correctly finding that the false-imprisonment and false-arrest exceptions do not bar Alred's claims, the trial court went on to conclude that Love's actions constituted discretionary functions, and thus, Alred's claims were barred by sovereign immunity on that basis—even though GPDC never made such an argument. And we agree with both Love and GPDC that the trial court erred in granting the motion to dismiss on this basis.

[20] *See* OCGA § 51-7-1 ("An arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested."); OCGA § 51-7-20 ("False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty."). *Cf. Watson v. Ga. Dep't of Corr.*, 285 Ga. App. 143, 144 (1) (645 S.E.2d 629) (2007) ("[Appellant] alleges that the Department [of Corrections] negligently extended his incarceration beyond the date he should have been released. Therefore, his tort claim is a claim of false imprisonment. Given that under OCGA § 50-21-24 (7), the State and its agencies cannot be held liable for a plaintiff's losses resulting from false imprisonment, [Appellant's] tort claim against the Department is barred by the State's sovereign immunity." (citation & footnote omitted)); *Collier v. Whitworth*, 205 Ga. App. 758, 760 (423 SE2d 440) (1992) (affirming grant of summary judgment on grounds that the commissioner of the Georgia Department of Corrections was immune from suit for losses that resulted from false imprisonment when appellant argued he was held beyond the end of his prison sentence).

16

Under the GTCA, a "discretionary function or duty" is "a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors."[21] And the GTCA further provides that "[t]he state shall have no liability for losses resulting from[ ] . . . [t]he exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved is abused[.]"[22] So, in order for the "discretionary function" exception to apply, "it must be shown that a state officer or employee was afforded discretion with respect to the conduct that is alleged to amount to a tort, [and] that an exercise of the discretion afforded amounts to a policy judgment based upon a consideration of social, political, or economic factors."[23]

---

[21] OCGA § 50-21-22.

[22] OCGA § 50-21-24 (2).

[23] *Cowart v.*, 340 Ga. App. at 185 (punctuation omitted); *accord Ga. Dep't of Human Servs. v. Spruill*, 294 Ga. 100, 106 (2) (751 SE2d 315) (2013).

In this case, Alred argues that her claims do not fall under the ambit of "discretionary duties or functions," while GPDC contends the trial court prematurely based its decision on this conclusion when it purposefully did not raise this argument because the record is undeveloped in this regard. And because we agree with GPDC that the record is undeveloped on this question, we reverse the trial court's grant of the motion to dismiss on this basis and remand for further proceedings consistent with this opinion.[24]

*Judgment reversed and case remanded. Mercier, J., and Senior Appellate Judge Herbert E. Phipps, concur.*

---

[24] *See Cowart*, 340 Ga. App. at 185 (reversing grant of motion to dismiss after concluding court erred in granting it on "discretionary duties and functions" basis when record lacked evidence by which to determine whether basis applied); *Grant v. Ga. Forestry Comm'n*, 338 Ga. App. 146, 156 (4) (789 SE2d 343) (2016) (physical precedent only as to Div. 3) (holding that trial court erred in granting motion to dismiss on "discretionary duties and functions" basis when Georgia Forestry Commission did not make that argument below, plaintiff had no opportunity to present evidence or argument in opposition, and record was thus undeveloped on that question).